UNITED STATES of America, Appellee,

v.

Joanne GRAHAM et al., Appellants.

Nos. 76–1346, 76–1356, 76–1368 and 76–1419.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 8, 1976.

Decided Jan. 26, 1977.

------

6. 40 CFR §§ 125.36(h)(4)(ii) and 125.36(m) (1976).

Philip F. Miller, and Robert W. Pratt, Des Moines, Iowa, for appellants; James E. Brick and Robert A. Wynn, and Naomi S. Mercer, Des Moines, Iowa, on briefs.

George H. Perry, Asst. U. S. Atty., Des Moines, Iowa, for appellee; Allen L. Donielson, U. S. Atty., on brief.

Before GIBSON, Chief Judge, and LAY and STEPHENSON, Circuit Judges.

GIBSON, Chief Judge.

Joanne Graham, Marsha Binns, Walter Jackson, Jr., and Jewell Anderson appeal their convictions of violating various provisions of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.* (1970), *as amended*, (Supp. V, 1975). These defendants were indicted with David Binns and Billy Pickens in Count I for conspiring to distribute heroin and to possess heroin with intent to distribute in violation of 21 U.S.C. § 846 (1970). Count II charged Marsha Binns with unlawfully distributing heroin and Count III charged her with unlawfully possessing heroin with intent to deliver in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) (1970).[1] Count IV charged Pickens with

---

1. The indictment also charged Marsha Binns in two counts of illegally transporting, possessing and receiving a firearm. These counts were severed before trial and have since been dismissed at the Government's request.

illegally possessing heroin with intent to deliver.

All defendants except David Binns[2] tendered pleas of not guilty to these charges and the case proceeded to trial. The jury acquitted Marsha Binns on Count II and Pickens on Counts I and IV. Guilty verdicts were returned against Graham, Marsha Binns, Jackson and Anderson on the Count I conspiracy charge and against Marsha Binns on the Count III possession charged. The District Court[3] sentenced Marsha Binns to ten years on Count I to be followed by a three-year special parole term and gave her a ten-year concurrent sentence on Count III. Jackson, Anderson and Graham were sentenced to eight years, four years and three years respectively, with all sentences to be followed by a three-year special parole term.

The facts in this multi-defendant narcotic conspiracy case are characteristically extended. The heroin distribution scheme here was pursued primarily in Des Moines, Iowa, but its reach encompassed a four-state area. The conspiracy extended over a three and one-half month period and involved many individuals in addition to the present defendants. Little purpose would be served in detailing the day-to-day distribution activities of the defendants in this case since, as to all the defendants except Anderson, the evidence of participation in the conspiracy is nothing less than overwhelming. However, we will briefly discuss the general nature of the conspiratorial scheme and the roles the various defendants played.

Merilyn Allen, an unindicted co-conspirator in this case, testified for the Government at trial. Allen testified that on August 11, 1975, she was contacted by Graham and was requested to go to Graham's apartment. Allen complied and, upon arriving at the apartment, Graham introduced her to David Binns, Marsha Binns, Jackson and Anderson. Allen, Graham and David Binns discussed the profitability of distributing heroin in Des Moines and, after agreeing that such a venture would be successful, David Binns asked Allen to assist them in the distribution of heroin; Allen agreed to participate. David Binns and Jackson immediately went to Binns' automobile and secured the heroin. Marsha Binns, Jackson and Graham then prepared the heroin for sale by diluting it with dorman and quinine. For the next several days, Allen and Graham would go on the street, solicit known heroin users and obtain money for the heroin. The money would be taken to Marsha Binns and Jackson and exchanged for heroin. The heroin would then be taken back to the customers by Allen and Graham. During this process, Jackson acted as the "overseer" and "protector" for the sales agents, Allen and Graham.

Most of the heroin for this distribution scheme was brought into the Des Moines area by David Binns and Anderson. The evidence shows that David Binns and Anderson often distributed heroin personally when Allen and Graham presented them with money from heroin sales. In addition to distributing heroin in Des Moines, members of this scheme travelled to Omaha, Nebraska, and Waterloo, Iowa, to market heroin. Many other individuals, including Barry Smith, an unindicted co-conspirator who testified for the Government at trial, became involved in the scheme.

The details of this heroin distribution ring were disclosed to law enforcement officials when Allen was arrested for soliciting for prostitution on October 26, 1975, and she agreed to cooperate with the Des Moines Metropolitan Area Narcotics Squad (MANS Unit). On November 7, 1975, Barry Smith also agreed to assist the MANS Unit in its investigation of this scheme.

---

2. At the time of trial, David Binns was suffering from various physical disabilities resulting from a shooting. He has not pled or been brought to trial on the Count I conspiracy charge against him.

3. The Honorable William C. Stuart, United States District Judge for the Southern District of Iowa.

Through surveillance and the cooperation of Allen and Smith, the MANS Unit was able to identify the participants in the continuing scheme. On November 14, 1975, Smith informed the MANS Unit officers that he, Marsha Binns and Pickens had registered at the Kirkwood Hotel in Des Moines under the name "James Carr" and that they would be in possession of a quantity of heroin. An officer verified that a "James Carr" had checked into Room # 606 at the Kirkwood Hotel and that two Negro males and one Negro female had entered the room. A search warrant was secured and four officers went to the Kirkwood Hotel to execute the warrant. They knocked on the door of Room # 606 and Marsha Binns opened the door. After she ascertained that they were police officers, she attempted to thwart their entry into the room but was unsuccessful. A search of her person disclosed a firearm and several packets of heroin. Other contraband was found in the room. She was placed in custody and the other defendants were arrested later.

## I

Defendants' initial contention is that the search of Marsha Binns' room at the Kirkwood Hotel on November 14, 1975, was not supported by probable cause and, thus, the District Court erred in refusing to suppress the fruits of that search. The search was conducted pursuant to a warrant issued by a state court judge. The request for the warrant was accompanied by an affidavit prepared by Officer Loren Zimmerman of the MANS Unit. In the affidavit, Officer Zimmerman stated that he had been advised by an informant that Marsha Binns had just returned from Chicago with a quantity of heroin and had checked into Room # 606 at the Kirkwood Hotel in Des Moines. The affiant stated that he had verified Marsha Binns' registration into Room # 606 at the Kirkwood Hotel. The informant advised Officer Zimmerman that Pickens would be accompanying Marsha Binns and that Pickens and Barry Smith would be in possession of heroin. The affidavit recited that the informant had gained this information from personal conversa-

tions with Marsha Binns, Pickens and Smith. The informant was a close associate of Marsha Binns and had gone with her on previous trips to Chicago to secure heroin. Also, the informant had observed Marsha Binns, Pickens and Smith in possession of heroin on prior occasions. According to the affidavit, the informant had given reliable information in a previous narcotics case and the information had been used to secure a search warrant.

■ It is clear that a search warrant affidavit need not be based solely on the personal observations of the affiant, but may contain hearsay information supplied by an informant. *See Draper v. United States*, 358 U.S. 307, 311–12, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In order to credit this hearsay information and permit it to be used in determining whether or not the affidavit establishes probable cause, the magistrate or issuing judge must be informed of (1) some of the underlying circumstances from which the affiant determined that the informant was credible or his information reliable and (2) some of the underlying circumstances from which the informant reached the conclusions contained in the tip. *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States v. Cummings*, 507 F.2d 324, 328 (8th Cir. 1974). Even if an informant's tip, standing alone, is deficient under the dual criteria of *Aguilar*, it may be constitutionally adequate if it is sufficiently detailed or sufficiently corroborated to be as trustworthy as a tip passing the *Aguilar* tests. *Spinelli v. United States*, 393 U.S. 410, 415–17, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *see Draper v. United States, supra.*

■ The first prong of *Aguilar* is amply satisfied in this case. "The fact that an informant has previously given accurate information adequately establishes his reliability." *United States v. Scott*, 545 F.2d 38 at 40 (8th Cir. 1976). The informant's reliability here was bolstered by the affiant's verification that Marsha Binns had in fact checked into Room # 606 at the Kirkwood Hotel. This corroboration made it clear "that the informant had not been fabricat-

ing his report out of whole cloth." *Spinelli v. United States, supra* 393 U.S. at 417, 89 S.Ct. at 590; *see United States v. Scott, supra.*

■ The affidavit also set forth the underlying circumstances from which the informant concluded that Marsha Binns, Pickens and Smith were in possession of heroin and, thus, fulfilled the second requirement of *Aguilar.* Although the affidavit did not specify that the informant had personally observed heroin in the possession of these individuals on November 14, 1975, *see United States v. Regan,* 525 F.2d 1151, 1156 (8th Cir. 1975), the informant did derive his conclusion from "personal conversations" with them. Furthermore, the informant was a close associate of Binns, Pickens and Smith, *see United States v. Regan, supra* at 1154, 1156, and his tip contained a statement against penal interest as he admitted that he had accompanied Binns to Chicago on previous occasions for the purpose of securing heroin, *see United States v. Harris,* 403 U.S. 573, 583–84, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Finally, the tip was corroborated in part by the affiant's investigation.

We conclude that the informant's tip passed muster under *Aquilar* and its progeny. This information was properly credited by the issuing judge and it provided probable cause for the search. The District Court did not err in refusing to suppress the items found during the search.

II

Defendants contend that the District Court committed reversible error by allowing defendants' alleged co-conspirator, Merilyn Allen, to testify as to extrajudicial statements of other alleged co-conspirators before the existence of a conspiracy had been established by independent evidence. A correlative contention is that the District Court did not give an adequate cautionary instruction to the jury at the time these statements were offered in evidence.

The Government's first witness at trial was Allen, who testified in detail as to the heroin distribution scheme and the defendants' participation in the scheme. Various

defense counsel objected to that portion of Allen's testimony in which she related out-of-court statements of her alleged co-conspirators. At the request of counsel, the District Court instructed the jury that the Government was obligated to prove the existence of and defendants' participation in a conspiracy before the statements of co-conspirators could be used against the defendants. The court stated that it was admitting the evidence with the understanding that the Government must tie the defendants to a conspiracy. A short time later, the District Court expounded upon this instruction and re-emphasized that the Government must present evidence showing the existence of a conspiracy.

■ Statements by a co-conspirator made in furtherance of the conspiracy are not hearsay and are admissible against all co-conspirators. *United States v. Frol,* 518 F.2d 1134, 1136 (8th Cir. 1975); Fed.R.Ev. 801(d)(2)(E). To allow admission of such statements, the Government's proof at trial must show a "likelihood of illicit association between the declarant and the defendant[s]." *United States v. Sanders,* 463 F.2d 1086, 1088 (8th Cir. 1972). There is no need, however, for the Government to prove this "illicit association" before offering the extrajudicial statements in evidence. The order of proof at trial is vested in the district court's discretion, *Brinlee v. United States,* 496 F.2d 351, 354 (8th Cir.), *cert. denied,* 419 U.S. 878, 95 S.Ct. 142, 42 L.Ed.2d 118 (1974), and the court may permit these statements to be conditionally admitted subject to being "connected up" by subsequent, independent proof of the requisite illicit association. *United States v. Williams,* 529 F.2d 557, 559 (8th Cir.), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2232, 48 L.Ed.2d 884 (1976); *United States v. Kelley,* 526 F.2d 615, 618 (8th Cir. 1975), *cert. denied,* 424 U.S. 971, 96 S.Ct. 1471, 47 L.Ed.2d 739 (1976).

■ The District Court in this case did not abuse its discretion in allowing Allen to relate extrajudicial statements of alleged co-conspirators before the Government presented independent proof of an illicit

association between declarant and the various defendants. The Government eventually proved, partly through Allen recounting her own participation in the conspiracy, *see Brinlee v. United States, supra* at 354–55, the existence of a conspiracy among the defendants in this case. Requiring the Government to prove an illicit association before offering extrajudicial statements would compel a fragmented presentation of evidence and would serve no legitimate purpose in a conspiracy case. This matter is best left to the discretion of the trial judge. Finding no abuse of discretion in the present case, we hold that the Government adequately established an illicit association and the extrajudicial statements were admissible against all defendants.

■ The cautionary instruction given by the District Court advised the jury that extrajudicial statements of alleged co-conspirators were not admissible against defendants until the Government proved a conspiracy and the defendants' membership in that conspiracy. Absent from this cautionary instruction was a statement that the conspiracy must be established by substantial, independent evidence. *See United States v. Nixon*, 418 U.S. 683, 701 n. 14, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Williams, supra* at 557. Defendants contend, in essence, that the omission prejudiced them because the jury was not informed that the conspiracy could not be proved on the basis of the extrajudicial statements related by Allen, but must be developed through independent evidence.

The Fifth Circuit, *United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973), and the First Circuit, *United States v. Honneus*, 508 F.2d 566 (1st Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975), have ruled that trial judges must caution the jury, at the time the extrajudicial statements of alleged co-conspirators are offered, that the conspiracy and each defendants' membership in the conspiracy must be established by independent, non-hearsay evidence before the statements can be used against the defendants. This court

has never expressly aligned itself with the "mandatory instruction" position taken by the First and Fifth Circuits, and we do not consider this case an apt one for either adopting or rejecting that position. Unlike *United States v. Apollo, supra*, where no cautionary instruction was given at the time the extrajudicial statements were offered, the District Court in this case gave two timely cautionary instructions to the jury. The only question here is whether defendants were prejudiced by the omission in the District Court's cautionary instruction. We hold that they were not prejudiced.

The jury was fully instructed on the Government's burden to prove the conspiracy and its membership before the extrajudicial statements could be used against the participants. This is the more important element of a cautionary instruction since it advises the jury of the conditional nature of the admission of alleged co-conspirator's extrajudicial statements. *United States v. Honneus, supra* at 577. The failure to inform the jury that the Government must prove these matters by "substantial, independent evidence", while clearly an advisable constituent of a cautionary instruction, was not prejudicial to the defendants. Merilyn Allen, whose testimony was the subject of the objections, presented direct evidence of her own participation in the conspiracy, as well as the inculpatory activities of the other defendants in the conspiracy. Such direct testimony is not hearsay and is not inadmissible or objectionable in a conspiracy trial. *Brinlee v. United States, supra*, 496 F.2d at 354–55. Through this evidence and other testimony at trial, the Government adduced overwhelming proof of a conspiracy in which all defendants participated. There was no reversible error injected into this case by the omission in the cautionary instruction. *Cf. United States v. Moore*, 505 F.2d 620 (5th Cir. 1974), *cert. denied*, 421 U.S. 918, 95 S.Ct. 1581, 43 L.Ed.2d 785 (1975). Defendants point to no statements which were improperly admitted, *United States v. Buschman*, 527 F.2d 1082, 1090 (7th Cir. 1976), and we perceive

no basis for concluding that they were prejudiced by the District Court's instruction.[4]

### III

Defendants Graham, Jackson and Anderson contend that they were prejudiced by the initial joinder of the conspiracy count with the individual, substantive counts against Marsha Binns and Pickens. Fed.R.Cr.P. 8(b)[5] provides:

> Two or more defendants may by charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

It is permissible and also customary to join a conspiracy count with separate substantive counts, *Pegram v. United States*, 361 F.2d 820, 821 (8th Cir. 1966); 1 C. Wright, *Federal Practice and Procedure* § 144, at 330 (1969), even though some of the alleged co-conspirators are not charged in the substantive counts, *United States v. Leach*, 429 F.2d 956, 960 (8th Cir. 1970), *cert. denied*, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971); *Wangrow v. United States*, 399 F.2d 106, 109–10 (8th Cir.), *cert. denied*, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968). The two separate charges against Marsha Binns and the single charge against Pickens were "overt acts" listed in the conspiracy count and evidence bearing on the activities of Binns and Pickens which gave rise to the substantive counts would have been admissible irrespective of the joinder. *United*

*States v. Pullings*, 321 F.2d 287, 295 (7th Cir. 1963). The conspiracy count in this case formed the connecting link of the substantive counts. *See Wangrow v. United States, supra* at 110. There was no error in the joinder of counts.

### IV

Defendants argue that the joint trial in this case prejudiced them and that the District Court should have granted their motions for severance. According to defendants, the jury, rather than considering the quantum of evidence relating to each defendant, convicted all defendants on the basis of accumulative evidence produced at trial. Defendants Anderson, Jackson and Graham claim that the weight of evidence against Marsha Binns tended to "spillover" to them and provided the jury with an impermissible basis for convicting each of them.

It is axiomatic that individuals who are charged with engaging in a conspiracy should be tried together, especially where proof of the defendants' complicity in the conspiracy is based on the same evidence and acts. *United States v. Hutchinson*, 488 F.2d 484, 492 (8th Cir. 1973), *cert. denied sub nom. Ennis v. United States*, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974). Severance will be permitted if there is a showing of real prejudice to an individual defendant. *United States v. Kirk*, 534 F.2d 1262, 1269 (8th Cir. 1976); *Golliher v. United States*, 362 F.2d 594, 603 (8th Cir. 1966). The granting or denying of the motion to sever rests in the sound discretion of the District Court, *United States v. Kirk, supra* at 1269, and defendants

---

4. We expressly reserve for another day the question of whether and, if so, under what circumstances a conviction may be reversed if the District Court refuses, upon request, to give a cautionary instruction at the time the extrajudicial statements of alleged co-conspirators are offered in evidence. Nor do we address the issue of whether a cautionary instruction, similar to the one in the present case, would be sufficient in a case where the evidence of a concert of action was marginal. To avoid problems of this nature, it would be advisable for district courts to caution jurors at the time

these extrajudicial statements are proffered that the Government is obligated to prove the existence of a concert of action between the declarant and defendants by independent evidence before the statements of the declarant can be used against the defendants.

5. In a case where multiple defendants are jointly indicted, as here, the propriety of the initial joinder is governed by Rule 8(b) rather than the broader provisions of Rule 8(a). *Williams v. United States*, 416 F.2d 1064, 1068 (8th Cir. 1969).

shoulder a heavy burden in attempting to show an abuse of discretion. *Williams v. United States*, 416 F.2d 1064, 1070 (8th Cir. 1969).

 The record in this case portrays Marsha Binns as one of the moving forces behind the conspiracy and, therefore, the evidence against her may have been greater in a quantitative sense. However, there was substantial, probative evidence which implicated all other defendants in the conspiracy. Therefore, the evidence against Binns was not qualitatively more damaging than the evidence against the other defendants.[6] Because of the compelling evidence of all defendants' participation in the conspiracy, there has been no showing of prejudice arising out of the joint trial. The jury was carefully instructed that it should weigh the evidence against each defendant individually, "leaving out of consideration entirely any evidence admitted solely against other defendants." The jury in this case was surely capable of compartmentalizing the evidence as it related to each defendant, *United States v. Somers*, 496 F.2d 723, 730–31 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974), and we think the District Court was able to keep separate in the jurors' minds the participation of each defendant in the conspiracy, *United States v. Boswell*, 372 F.2d 781, 784 (4th Cir.), *cert. denied sub nom. Hellams v. United States*, 387 U.S. 919, 87 S.Ct. 2033, 18 L.Ed.2d 972 (1967).[7] We are unable to agree with defendants that they were convicted on the evidence accumulated against

all of them or that the evidence against Marsha Binns prejudicially "overflowed" to the other defendants. The District Court did not abuse its discretion in overruling defendants' motions for severance on these grounds.[8]

 Defendants also contend that the District Court's refusal to grant them separate trials deprived them of the testimony of their co-defendants. It is argued that, at the joint trial, each defendant was unable to secure the testimony of his or her co-defendant, who would not waive the privilege against self-incrimination to testify at the joint trial but might conceivably waive the privilege at a separate trial. As to Marsha Binns, Graham and Jackson, this contention is wholly without merit since each has failed to show that any co-defendant would be willing to testify on his or her behalf at a separate trial. A defendant is not entitled to severance on the weight of an "unsupported possibility" that a co-defendant's testimony might be forthcoming at a separate trial. *United States v. Kahn*, 381 F.2d 824, 841 (7th Cir.), *cert. denied*, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967); *see United States v. Somers, supra* at 731. A defendant's assertion that his co-defendant might testify at a separate trial must find some independent support in the record. The lack of such independent support in this case compels the conclusion that the District Court did not abuse its discretion in overruling the motions to sever of Marsha Binns, Jackson and Graham on this ground.[9]

6. Even if we were to conclude that the evidence against Binns was somewhat more damaging than that against her co-defendants, this alone would provide no basis for granting a severance. *United States v. Somers*, 496 F.2d 723, 730 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974).

7. The fact that the jury acquitted Pickens on the conspiracy count and convicted the other defendants attests to the diligence of the jury in considering each defendant's case separately.

8. Defendants Anderson, Jackson and Graham cryptically state in their brief that the objectionable antics of Marsha Binns at trial "undoubtedly" prejudiced them. These defendants have failed to particularize the antics which

were deemed objectionable and the record is relatively unenlightening on this point. Nor have these defendants shown in what respect they were prejudiced by these unspecified antics. Clearly, these unsupported allegations of co-defendant misconduct and resultant prejudice are insufficient to justify a finding that the District Court abused its discretion in not granting their motions for severance.

9. An additional basis for overruling the severance motions of these defendants is that none of them has shown that his or her co-defendants would offer exculpatory testimony if the co-defendants did testify at a separate trial.

Defendant Anderson, in her motion to sever and in various hearings in the District Court proceedings, represented that she desired to call Marsha Binns, David Binns and Graham to support her defense. It was argued that these defendants would testify in Anderson's behalf only if she were granted a separate trial at some later date. According to Anderson, these defendants would offer testimony at a separate trial which would tend to exonerate her.

The District Court found that Anderson had not made a sufficient showing that Marsha Binns and Graham would testify on Anderson's behalf at a separate trial. The record fully supports this finding.[10] The representation that these defendants might testify at a separate trial is based on nothing more than pure speculation and wishful thinking. *See Byrd v. Wainwright,* 428 F.2d 1017, 1022 (5th Cir. 1970). Anderson was able to show, through a deposition of David Binns, that Binns would be willing to testify for Anderson at a separate trial. However, neither this deposition [11] nor any evidence produced at hearings on this motion to sever established that the testimony of David Binns might tend to exonerate Anderson. We conclude that Anderson did not sustain her burden of showing that the District Court abused its discretion in overruling her motion to sever.

### V

Defendants attribute error to the District Court's refusal to instruct the jury more elaborately on the principle that "mere presence" or association with conspirators is not sufficient to show membership in the conspiracy. It is undisputed that guilt cannot be inferred from the mere presence of a defendant at the scene of the

crime or mere association with members of a criminal conspiracy. *See United States v. James,* 528 F.2d 999, 1013 (5th Cir. 1976). In accordance with this principle of law, the District Court instructed the jury:

> However, mere presence or association with conspirators, if any, is not in and of itself enough to establish that person as a member of the conspiracy. The mere act of purchasing a controlled substance for one's own use from a person found to be a conspirator is insufficient to establish the purchaser's membership in the conspiracy.

Defendants do not challenge the correctness of this instruction, but they contend that the District Court should have emphasized this "mere presence" principle to a greater extent. This argument lacks merit. There is no need for the trial judge to be repetitive in the instructions to the jury, nor should some portions of the instructions be accentuated over other portions. The District Court's "mere presence" instruction fairly and accurately informed the jury on this aspect of the law and there was no need to embellish or amplify upon that instruction. *See United States v. Martin,* 507 F.2d 428, 431 (7th Cir. 1974).

### VI

The next assignment of error urged by the defendants is that they were denied a fair trial because of various allegedly prejudicial matters brought to the jury's attention during the trial. The first of these incidents occurred during the Government's examination of MANS Officer Larry Edwards, who was asked if he had known Billy Pickens and Barry Smith prior to November 14, 1975. Edwards stated: "Yes, I had seen a mug shot of Billy Pickens and I knew Barry Smith." Pickens' counsel then

---

**10.** Anderson's counsel advised the District Court at a pretrial hearing that Graham would file an affidavit expressing her willingness to testify at a separate trial for Anderson and specifying the exculpatory nature of the testimony. For reasons not detailed in the record, the affidavit was not forthcoming; thus, we are unaware of Graham's intentions in this regard. We do note that many of Anderson's activities which tended to show a knowing participation

by her in the conspiracy did not take place in the presence of Graham. It is therefore questionable whether Graham's testimony would have materially benefited Anderson.

**11.** The District Court reviewed David Binns' deposition and stated that it contained nothing exculpatory in nature. Based upon our review of the deposition, we agree with that conclusion.

asked Edwards four questions relating to the mug shot. Later, all defense counsel moved for a mistrial on the basis of this reference to Pickens' mug shot.

■ This case does not involve the admission of a mug shot in evidence, Annot., 30 A.L.R.3d 908 (1970), or a defendant on appeal contending that his mug shot or criminal record should not have been presented before the jury, *see United States v. Rinaldi*, 301 F.2d 576, 578 (2d Cir. 1962). Here, the mug shot was only adverted to briefly in response to an inquiry by Government counsel. Defendants do not attribute any bad faith to Government counsel in this regard and, apparently, Edwards' response was unexpected. *See United States v. Splain*, 545 F.2d 1131 (8th Cir. 1976). Furthermore, the person most directly affected by this comment, Pickens, was acquitted by the jury and is not before us on appeal. We fail to perceive any basis for concluding that the defendants were derivatively prejudiced by this comment.[12]

■ Defendants complain that they were prejudiced by testimony which indicated that a "couple of guns" were observed at the home of David Binns. As David Binns was not a defendant at trial, he is claiming no prejudice but, again, the defendants on appeal are contending that they were prejudiced in a derivative manner. This testimony was not intentionally elicited or exploited by Government counsel. Defendants did not move to strike this statement or request a cautionary instruction. The passing reference to these guns did not prejudice defendants or justify a mistrial. *See McWilliams v. United States*, 394 F.2d 41, 47 (8th Cir. 1968), *cert. denied*, 393 U.S. 1044, 89 S.Ct. 643, 21 L.Ed.2d 593 (1969).[13]

■ Finally, Anderson contends that she was prejudiced when Government counsel allegedly displayed her criminal "rap sheet" before the jury. When an objection was lodged to this incident at trial, the District Court stated that the prosecutor's table, where the rap sheet was being held by Government counsel, was across the room from the jury. The District Court judge stated that he was as close to the rap sheet as the jury and he could not identify the document as a rap sheet. It would be pure speculation to assume that the jurors observed the rap sheet, appreciated its content and drew inferences unfavorable to Anderson. We will not engage in such speculation. *United States v. Cuomo*, 479 F.2d 688, 695–96 (2d Cir.), *cert. denied sub nom. Rizzo v. United States*, 414 U.S. 1002, 94 S.Ct. 357, 38 L.Ed.2d 238 (1973). Anderson was not prejudiced by this incident.

These minor incidents at trial neither individually nor collectively prejudiced the defendants. They occurred in the course of a ten-day trial which was ably presided over by an experienced trial judge. Defendants were not denied a fair trial by these occurrences.

## VII

■ Defendants contend that they were also prejudiced by the fact that the Government presented "cumulative evidence" and "monopolized" nine days of a ten-day trial in presenting its case. The conspiracy charged in this case extended over a three and one-half month period and the Government was required to present substantial testimonial and demonstrative evidence to

---

**12.** If defendants believed at trial that the jury might draw unfavorable inferences from this comment, they would have allowed the District Court to give the cautionary instruction which was offered. However, defendants rejected the offer.

**13.** The Government was permitted to place in evidence a gun and bullets taken from Marsha Binns at the time of her arrest. Defendants contend that this evidence was irrelevant and unduly prejudicial to them. We reject this con-

tention and hold that the District Court did not abuse its discretion in admitting these items in evidence against Marsha Binns. This evidence was admissible to show that Binns resisted arrest, thus showing consciousness of guilt. *See United States v. Ramirez*, 460 F.2d 1322, 1323 (10th Cir. 1972). There was no demonstrable prejudice to the other defendants. *See United States v. Gomez*, 529 F.2d 412, 420 (5th Cir. 1976).

prove its case. Although the Government's case in chief consumed nine days of trial, defendants fail to point out that a portion of this time was taken up by cross-examination of Government witnesses. Also, the defendants' persistent attacks upon the chain of custody of items offered in evidence required the Government to call several witnesses to lay the proper foundation for admission. We have reviewed the record in this case and conclude that the trial judge, who has the duty to regulate the course of trial, did not abuse his discretion in allowing the Government to present its case as it did. *See Fabian v. United States*, 358 F.2d 187, 192–93 (8th Cir.), *cert. denied*, 385 U.S. 821, 87 S.Ct. 46, 17 L.Ed.2d 58 (1966).

## VIII

Defendants argue that the District Court erred when it quashed a subpoena calling for ADAPT, Inc. to release the "file and all records of Merilyn D. Allen", who testified for the Government at trial. ADAPT is a regional drug treatment prevention program which Allen attended for detoxification purposes while she was addicted to heroin. The ADAPT program, being "directly * * * assisted by [a] department or agency of the United States" is required to maintain its patients' records in accordance with the confidentiality requirements of 21 U.S.C. § 1175 (Supp. V, 1975). Section 1175(b)(2)(C) provides that if the patient has not given written consent to disclosure of his or her records, the content of the records may be disclosed as follows:

If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon granting of such order, the court, in determining the extent to which any disclosure of all or part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

Allen did not consent to a release of her ADAPT records; therefore, defendants subpoenaed them in order to determine if they contained any material which might reflect adversely on Allen's credibility. The District Court conducted a hearing to determine whether the subpoena for Allen's records should be quashed. After hearing evidence on this issue and examining the records *in camera*, the District Court released a portion of the records but denied production of the balance. The court found that the patient's right to privacy inherent in the public interest aspect of preserving the drug prevention program outweighed any benefit the defense might derive from the records. Allen's addiction to heroin had been disclosed by her own testimony and the District Court stated that little else would be gained from an examination of the records.

 Allen's records were sealed by the District Court and forwarded to this court for our review. We have examined these records, as well as Allen's testimony at trial, and fully concur with the District Court that the defendants' cases would not have been aided by release of the records. Allen was subjected to extensive cross-examination on her use of heroin and nothing in her records could have provided any additional basis for attacking her credibility. Clearly, the public interest in the confidentiality of these patient records, as embodied in § 1175, far outweighed defendants' need for this information.

[T]he strictest adherence to the provisions of [§ 1175] is absolutely essential to the success of all drug abuse prevention programs. Every patient and former patient must be assured that his right to privacy will be protected. Without that assurance, fear of public disclosure of drug abuse or of records that will attach for life will discourage thousands from seeking the treatment they must have if this tragic national problem is to be overcome.

H.Conf.Rep.No. 92–920, 92d Cong., 2d Sess. —(1972), *reprinted in* [1972] U.S.Code Cong. and Admin.News, pp. 2062, 2072.

Applying these principles to the present case, we hold that the District Court properly quashed the subpoena for Allen's ADAPT records.[14]

## IX

 Defendant Graham argues that she was denied equal protection of the law because the Government granted immunity to Vicki Johnson, an unindicted co-conspirator, but refused to grant immunity to her. This argument is both novel and unavailing. The power to apply for immunity pursuant to 18 U.S.C. §§ 6002–03 (1970) is the sole prerogative of the Government being confined to the United States Attorney and his superior officers. *United States v. Allstate Mortgage Corp.*, 507 F.2d 492, 495 (7th Cir. 1974); *In re Kilgo*, 484 F.2d 1215, 1222 (4th Cir. 1973). It would be patently unreasonable to require the Government to extend immunity to all defendants merely because immunity was granted to a fellow co-defendant. Graham's contention that she was denied equal protection on this basis is without merit.[15]

## X

Defendants' final contention is that the evidence is insufficient to support their convictions. We have carefully reviewed the record as to Marsha Binns, Jackson and Graham and find that the evidence of guilt is overwhelming. Although the evidence of Anderson's participation in the conspiracy is not quite so compelling, it is substantial and is clearly sufficient to support her conviction. The record shows that she distributed heroin to Allen and Graham for sale on the street and received the proceeds of these sales. She also accompanied David Binns on various occasions when the supply of heroin was brought into the Des Moines area.

The judgments of conviction are affirmed.

14. Allen's ADAPT file contained not only her patient records, but also her employment records which had been compiled during her employment in the drug program. The District Court concluded that these employment records were entwined with the patient records and, thus, were likewise protected by § 1175. We agree with this conclusion and hold that the Allen employment record, which formed a minor part of her total file, was likewise protected from disclosure by § 1175.

15. If Graham is contending that she was the victim of unconstitutional selective prosecution, she has failed to show the requisite "intentional and purposeful discrimination" by the prosecutor. *United States v. Ojala*, 544 F.2d 940 (8th Cir. 1976); *see State v. Trocadaro*, 36 Ohio App.2d 1, 301 N.W.2d 898 (1973), *cert. denied*, 415 U.S. 993, 94 S.Ct. 1595, 39 L.Ed.2d 891 (1974).