**UNITED STATES of America, Appellee,**

v.

**Rafeal WOFFORD, Appellant.**

No. 77–1383.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 31, 1977.
Decided Sept. 28, 1977.

Paul H. Ray, Plymouth Village, Minn., for appellant.

Mel I. Dickstein, Asst. U. S. Atty., (argued), Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., for appellee.

Before GIBSON, Chief Judge, and HEANEY and WEBSTER, Circuit Judges.

HEANEY, Circuit Judge.

Rafeal Wofford and Samuel Gibson were indicted for unlawfully distributing heroin in violation of 21 U.S.C. § 841(a)(1). The three-count indictment, one count for each sale, charged Gibson under Counts I and II and Wofford under Counts II and III.

The appellant, Wofford, was tried alone in February, 1977. This trial resulted in a hung jury. Wofford was retried in March, 1977, with the defendant Gibson. The jury found Wofford guilty of Counts II and III and Gibson guilty of Counts I and II. The trial court sentenced Wofford to six years imprisonment on each count with the sentences to run concurrently.

We find no error and affirm the conviction.

On September 27, 1976, Robert Adams, an informant for the Drug Enforcement Administration, called Gibson and arranged to purchase a "teaspoon" of heroin from him for $135. Accompanied by Special Agent John Boulger, Adams drove to Gibson's home in St. Paul, Minnesota, arriving at approximately 3:00 P.M. After being searched, Adams entered the home while Boulger waited in the car. Gibson informed Adams that his supplier had not arrived; and after waiting about one-half hour, Gibson suggested that they drive to Wofford's residence at 177 North Milton, in St. Paul. The three men drove to an apartment building at that address. Gibson entered the building. He returned shortly and had a brief conversation with Adams. Adams informed Boulger that he could not buy the heroin for $135 but would have to pay $160. Boulger attempted to hand $160 to Gibson, but Gibson refused to take it. Boulger then handed the money to Adams who, in turn, handed it to Gibson, Gibson reentered the building with the money. He returned and got into the back seat of the car. Gibson handed Adams a small heat-sealed plastic package that subsequent chemical analysis showed contained heroin. Adams then gave the package to Boulger.

The following day, September 28, Adams called Gibson again. Adams testified that he arranged another purchase from Gibson. Adams and Boulger drove to a Minneapolis address about 11:00 A.M. Upon arrival, they were admitted to an apartment in the building. Gibson met them and discussed the $650 purchase price of the heroin. Adams had testified that this was the negotiated price for a "tablespoon" of heroin. Gibson asked for $650, but refused to take it directly from Boulger. Boulger then handed the money to Adams who gave it to Gibson. Gibson asked Boulger to remain in the kitchen. Gibson and Adams, then, went into a back bedroom where they discussed the heroin purchase with Wofford.

Gibson temporarily left the room. When Gibson left, Wofford handed Adams a "piece of paper" later found to contain heroin. Shortly thereafter, Gibson reentered the bedroom, handed the money to Adams who recounted it and gave it to Wofford. Wofford agreed to meet Adams later that evening.

Reentering the kitchen, Adams handed the piece of paper containing heroin to Boulger. The two then left. Wofford's car was observed in a parking lot near the apartment building. Wofford denied being in the apartment or taking part in the sale.

Later that same day, Adams and Boulger drove to the apartment building at 177 North Milton. Adams entered the building and returned with Wofford. Adams and Wofford got into a parked car in front of the building and talked about ten minutes. Adams negotiated a purchase of heroin from Wofford in the car. Adams then left the car and obtained $320 from Boulger. Wofford and Adams reentered the building. Wofford weighed the heroin out, put it in a plastic bag and sealed it. Adams left the building and gave the plastic bag, later tested and found to contain heroin, to Boulger.

As Adams and Boulger drove away, they met Wofford in his car at the intersection. They stopped and talked to Wofford who confirmed taking $320 for the sale of the

heroin. Wofford denied making that statement or taking part in the sale.[1]

Wofford's first contention is that his joinder with Gibson was impermissible under Fed.R.Crim.P. 8(b).[2] In essence, he argues that no series of acts or transactions existed because the evidence showed no participation of Gibson in Count III, the third sale and provided only a weak inference of Wofford's participation in Count I, the first sale.

■ Rule 8(b) permits joinder of multiple defendants if each defendant has participated in a closely related series of acts or transactions. It is not necessary, however, that each defendant have participated in each act or transaction of the series.[3] *Williams v. United States*, 416 F.2d 1064 (8th Cir. 1969); *Haggard v. United States*, 369 F.2d 968 (8th Cir. 1966); *see United States v. Martinez*, 479 F.2d 824 (1st Cir. 1973). Consequently, our inquiry is whether the acts or transactions are part of a closely related series and whether each defendant participated in the series of acts or transactions. We answer both questions in the affirmative.

■ The evidence shows that Adams, the informant, participated in all three sales; the three sales took place in a two-day period; the first and third sales took place at Wofford's home; the third sale was arranged at the time of the second sale; the heroin purchased in the first sale was packaged in the same unusual fashion and was identical in appearance to the heroin purchased during the third sale from Wofford; and, Wofford's car was parked just outside the building in which the second and third sales took place.

Wofford further argues that even if joinder were permissible, the government waived its right to join Gibson after it tried Wofford alone in the first trial. It appears that Gibson was out of the jurisdiction prior to February 4, 1977, when he was returned to testify in Wofford's first trial pursuant to a writ of habeas corpus ad prosequendum. For some unexplained reason, the government did not utilize Gibson in the first trial. Instead, he was arraigned on February 9, 1977, two days after Wofford's first trial started. Wofford maintains that he did not discover the joinder until shortly before the second trial began. He argues that he was deprived of a full hearing on the issue of severance.

■ Ordinarily, if defendants are jointly indicted and similar evidence from the related series of events is used to convict each defendant, the defendants should be tried together. *United States v. Borelli*, 435 F.2d 500 (2nd Cir. 1970), *cert. denied*, 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971). The benefits of this policy, such as the avoidance of multiple litigation and conservation of judicial resources, did not vanish when Gibson failed to appear at the first trial. The facts making joinder proper under Rule 8(b) were unchanged. The joint indictment did not become insufficient because Gibson was unavailable. *Cf. United States v. Martinez, supra.*

■ The issue is not, as Wofford argues, one of waiver. Instead, the issue is one of prejudice—whether harmful circumstances justifying severance under Fed.R. Crim.P. 14 were demonstrated.[4] *United*

---

1. In light of the jury verdict of guilty, we must view the evidence in a way most favorable to the verdict rendered. *United States v. Bevans*, 496 F.2d 494 (8th Cir. 1974); *United States v. Overshon*, 494 F.2d 894 (8th Cir.), *cert. denied*, 419 U.S. 853, 878, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974).

2. Fed.R.Crim.P. 8(b) provides:
   (b) *Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transac-

tions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

3. Rule 8(b), by its terms, does not require that all defendants be charged in each count.

4. Fed.R.Crim.P. 14 provides:
   If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial to-

*States v. Martinez, supra*; *United States v. Borelli, supra; Williams v. United States, supra.* To demonstrate prejudice requires more than merely showing a better chance of acquittal at a separate trial. *Williams v. United States, supra; Tillman v. United States*, 406 F.2d 930 (5th Cir.), *vacated in part*, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969). No showing of prejudice was made here. We find no abuse of discretion in denying a severance.

■ Wofford argues that a separate trial would have permitted him to call Gibson as a witness, but he did not show that Gibson was likely to testify or that Gibson's testimony would exculpate him. An assertion of prejudice absent such a showing does not require severance. *See Tillman v. United States, supra; Smith v. United States*, 385 F.2d 34 (5th Cir. 1967).

During the trial, Adams alluded to a statement by Gibson that Wofford furnished the heroin in the first sale. The trial court, sua sponte, instructed the jury that statements by a defendant could not establish the guilt of a codefendant unless the jury was convinced beyond a reasonable doubt that the statement was made in furtherance of a plan in which all the defendants were involved.[5] Instead, he argues that the trial court should have instructed the jury to disregard all statements of Gibson about the first sale in establishing Wofford's guilt as no evidence of a common plan existed.

■ As we have previously found sufficient independent evidence to link the three sales into a common series of events, we feel the trial court did not abuse its discretion in giving this particular cautionary instruction. The trial court made clear that only under certain circumstances could certain evidence be used against Wofford. Rule 8(b) assumes that evidence admissible against one defendant may not apply to another defendant. The appropriate safeguard against prejudice to the other defendant is a cautionary instruction. *Haggard v. United States, supra.*

Through inadvertence, the government failed to offer into evidence the heroin, Government's Exhibits 1, 2 and 3. These were properly marked and authenticated. *See* Fed.R.Evid. 901. The trial court reminded the prosecution of this failure and Wofford contends the trial court improperly interjected itself in the government's behalf in doing so.

■ Although the trial court must remain unbiased, it has a responsibility to see that justice is done. The trial court did not assume the role of advocate by merely reminding the prosecution that evidence, thoroughly discussed at trial, had not been technically offered into evidence. *See United States v. McCord*, 166 U.S.App.D.C. 1, 509 F.2d 334 (1974) (en banc), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975); *United States v. Spica*, 413 F.2d 129 (8th Cir. 1969).

Wofford's remaining contentions are similarly without merit.

---

gether, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

5. The trial court gave the following instruction:
I might advise the jury at this time—with respect to certain statements or acts I will advise the jury as follows:
A statement made or an act done by a person outside the presence of the defendant

Wofford or the defendant Gibson may be considered by the jury if the jury finds from independent evidence beyond a reasonable doubt that:
1. There was a common plan or arrangement;
2. The person making the statement or doing the act and the defendant against whom the statement or act is used were participants in the common plan or arrangement; and
3. The statement made or act done were made during and in furtherance of the common plan or arrangement.
At the conclusion of the case I will advise you more extensively in this direction.

■ The passing reference to the "last trial" in Adams's testimony was, at best, ambiguous. Adams testified that he had worked on other cases. There is no suggestion that the "last trial" was Wofford's first trial and not one of these other cases. Also, Wofford has not demonstrated the substantial injury to his rights needed to justify a reversal. *See Lowe v. United States*, 389 F.2d 108 (8th Cir.), *cert. denied*, 392 U.S. 912, 88 S.Ct. 2072, 20 L.Ed.2d 1371 (1968); *Cotton v. United States*, 361 F.2d 673 (8th Cir. 1966).

■ The trial court properly denied his motion for a directed verdict based on the credibility of Adams. The evidence does not indicate that Adams was paid on a contingent fee basis, as Wofford suggests. Substantial payments to an informant require scrutiny of his testimony but not automatic reversal of a conviction. *Compare United States v. Garcia*, 528 F.2d 580 (5th Cir.), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1190 (1976), *with Williamson v. United States*, 311 F.2d 441 (5th Cir. 1962). Judging the credibility of a witness is a task for the jury. *United States v. Miller*, 543 F.2d 1221 (8th Cir. 1976), *cert. denied*, 429 U.S. 1108, 97 S.Ct. 1142, 51 L.Ed.2d 561 (1977); *United States v. White*, 451 F.2d 351 (8th Cir. 1971), *cert. denied*, 406 U.S. 923, 92 S.Ct. 1790, 32 L.Ed.2d 123 (1972).

■ After carefully reviewing the record, we find sufficient evidence from which a jury could convict.

The judgment is affirmed.