565 F.2d 533
 2 Fed. R. Evid. Serv. 814
 UNITED STATES of America, Appellee,
v.
Jerome C. ANTHONY, Appellant.
UNITED STATES of America, Appellee,
v.
Chauncey SLAYTON, Appellant.
UNITED STATES of America, Appellee,
v.
Ronald FUSELIER, Appellant.
UNITED STATES of America, Appellee,
v.
Aaron L. GANT, Appellant.
UNITED STATES of America, Appellee,
v.
Marsha DAVIS, Appellant.
UNITED STATES of America, Appellee,
v.
William WILSON, Appellant.
 Nos. 77-1189 to 77-1191 and 77-1210 to 77-1212.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Aug. 29, 1977.
Decided Nov. 16, 1977.
 
 Terrance J. Lechner, Kansas City, Mo., for appellant, Jerome Anthony, in No. 77-1189.
 Gary L. Argo, Kansas City, Mo., for appellant, Chauncey Slayton, in No. 77-1190.
 Lewis E. Pierce, Kansas City, Mo., for appellant, Ronald Fuselier, in No. 77-1191.
 Charles A. Gallipeau, Kansas City, Mo., for appellant, Aaron Gant, in No. 77-1210.
 Albert A. Riederer, Kansas City, Mo., for appellant, William Wilson, in No. 77-1212.
 Randall E. Hendricks, Kansas City, Mo., for appellant, Marsha Davis, in No. 77-1211; Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., on the brief.
 Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee; Bert C. Hurn (former U. S. Atty.); and Stephen L. Hill, Asst. U. S. Atty., Kansas City, Mo., on the brief.
 Before GIBSON, Chief Judge, and LAY and HEANEY, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 Appellants Aaron Gant, Ronald Fuselier, Jerome Anthony, Chauncey Slayton, Marsha Davis, William Wilson, and others, were indicted for conspiring to unlawfully distribute heroin and cocaine in violation of 21 U.S.C. § 846. Marsha Davis, William Wilson and Ronald Fuselier were also charged with unlawfully distributing heroin in violation of 21 U.S.C. § 841(a)(1) in Counts II and III; Counts II, III and IV; and Count IX respectively.
 
 
 2
 The case was tried twice. The first trial resulted in a mistrial because of an evidentiary matter. The second trial began on January 13, 1977, and resulted in a jury verdict on January 26, 1977. The jury found Marsha Davis not guilty on Count II and found the appellants guilty on all the remaining counts.
 
 
 3
 We affirm.
 
 
 4
 The appellants first contend that the trial court erred in sua spontefurnishing the jury with notebooks and pencils. It simultaneously instructed the jurors that they might find it helpful to take notes but advised them that they were not required to do so. The appellants argue that this action severely prejudiced them because one jury member was a legal secretary and, thus, was a potentially highly skilled notetaker. They contend that the remaining jury members would base their decision on the notes taken by the legal secretary rather than their individual recollection of the evidence.
 
 
 5
 It is within the discretion of the trial court to permit jurors to take notes during trial. United States v. Bertolotti, 529 F.2d 149, 159 (2d Cir. 1975); United States v. Braverman, 522 F.2d 218, 224 (7th Cir.), cert. denied, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975); United States v. Murray, 492 F.2d 178, 193 (9th Cir. 1973), cert. denied, 419 U.S. 942, 95 S.Ct. 210, 42 L.Ed.2d 166 (1974). The fact that certain jurors keep more detailed notes than other jurors is insufficient to show abuse of the trial court's discretion. See United States v. Standard Oil Company, 316 F.2d 884, 896-897 (7th Cir. 1963). Here, the appellants have not alleged that the legal secretary took any notes whatsoever. Moreover, the trial court did not require the jury to take notes, id., and the length and complexity of this case was such that note taking may have assisted the jury in sorting out the evidence. Under the circumstances, the trial court did not abuse its discretion.
 
 
 6
 The appellants next contend that the order of proof prevented meaningful cross-examination and unduly emphasized the testimony of certain witnesses. The trial court required the government to establish a prima facie case of conspiracy prior to admitting some of the appellants' out-of-court statements as evidence against all the appellants. This entailed calling several witnesses twice once to help establish the prima facie case and subsequently to expand on or complete their testimony.
 
 
 7
 Out-of-court statements of a coconspirator are admissible against other conspirators if the prosecution establishes a prima facie case of conspiracy by independent evidence. United States v. Graham, 548 F.2d 1302, 1308 (8th Cir. 1977); United States v. Williams, 529 F.2d 557 (8th Cir.), cert. denied, 426 U.S. 908, 96 S.Ct. 2232, 48 L.Ed.2d 834 (1976); United States v. Sanders, 463 F.2d 1086, 1088 (8th Cir. 1972). The trial court has considerable discretion as to the order of proof of the prima facie case. See Fed.R.Evid. 611(a). It may require the government to establish the prima facie case prior to introducing out-of-court statements or it may conditionally admit the statements provided the prosecution subsequently produces the independent evidence of the conspiracy. United States v. Williams, supra.
 
 
 8
 The trial court allowed the appellants the right to fully cross-examine the witnesses on both appearances. Furthermore, the appellants fail to specify a single instance in which the order of proof prevented a full and effective cross-examination. They also fail to point to any instances in which the court permitted witnesses to unnecessarily repeat testimony previously given. Under these circumstances, we find no error.
 
 
 9
 The appellants next argue that the trial court erred in not granting a mistrial because a letter summarizing an interview with a government witness was not made available to them. The appellants assert that the letter addressed to the United States Attorney from a regional director of the Drug Enforcement Administration was Jencks Act material. 18 U.S.C. § 3500. They contend that the failure to furnish this letter seriously impaired their cross-examination of the government witness.[1]
 
 
 10
 Certain task force officers of the Drug Enforcement Administration drafted the letter shortly after they had debriefed James Stemmons, the government witness, in the presence of Stemmons' attorney. After the debriefing, the officers reasonably concluded that Stemmons' life was in jeopardy. They decided to place Stemmons in protective custody and they sought the advice of an Assistant District Attorney concerning necessary procedures. They were informed that they had to make a written request to the Justice Department. The officers then wrote out a draft of the letter utilizing one of the officer's notes taken during the debriefing. A copy of this handwritten draft was furnished to the Assistant District Attorney so that he could immediately institute protective custody proceedings. The debriefing notes were destroyed immediately after the handwritten draft was made. All of these events occurred on the same day as the debriefing. The handwritten draft was typed into final form at a later date. In all major respects, the two writings are identical. However, this typewritten letter was never delivered to the District Attorney's office. Neither Stemmons nor his attorney was furnished a copy of or knew the contents of the notes, the handwritten draft or the letter.
 
 
 11
 A writing must be produced under the Jencks Act only if it is a "statement" as defined in 18 U.S.C. § 3500(e).[2] Goldberg v. United States, 425 U.S. 94, 105, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976); Kane v. United States, 431 F.2d 172, 174 (8th Cir. 1970). It is clear that the letter was not a statement to a grand jury, and equally clear that Stemmons never adopted or approved the letter. 18 U.S.C. § 3500(e)(1), (3). There remains the question of whether the letter was a substantially verbatim recital of an oral statement recorded contemporaneously. 18 U.S.C. § 3500(e)(2).
 
 
 12
 The question is a close one, see Palermo v. United States, 360 U.S. 343, 352-353, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); United States v. Cruz, 478 F.2d 408, 413 (5th Cir.), cert. denied, 414 U.S. 910, 94 S.Ct. 259, 38 L.Ed.2d 148 (1973); Tarvestad v. United States, 418 F.2d 1043, 1050 (8th Cir. 1969), cert. denied, 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116 (1970); Williams v. United States, 119 U.S.App.D.C. 177, 179, 338 F.2d 286, 288 (1964), but we need not decide it. Assuming arguendo that the letter was Jencks Act material, any failure to furnish it to the appellants was harmless error.
 
 
 13
 The letter reveals that Stemmons, on numerous occasions, placed appellant Ronald Fuselier with other members of the conspiracy during a period when Fuselier was actually in the Oklahoma City Jail. It is clear that substantially the same evidence was included in the grand jury transcript of Stemmons that was made available to the appellants. In addition, the government stipulated that Fuselier was incarcerated during the period in question after Stemmons had testified on direct that Fuselier was with the other conspirators. Furthermore, the appellants on cross-examination showed that Stemmons was unsure of Fuselier's identity. See Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959); United States v. Pope, 415 F.2d 685, 689 (8th Cir. 1969), cert. denied, 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132 (1970). Cf. Kane v. United States, supra at 175.
 
 
 14
 The appellants' fourth contention is that the trial court erred in denying the motions of all the appellants for severance. They contend that they were severely prejudiced by the joint trial because: (1) the decision of some of the appellants to take the stand while others did not amounts to a comment on the failure of these appellants to testify; and (2) the amount of evidence of guilt against certain appellants was so overwhelming that it "spilled over" into the remaining appellants' determination of guilt.
 
 
 15
 A motion to sever under Fed.R.Crim.P. 14 is addressed to the sound discretion of the trial court. United States v. Jackson, 549 F.2d 517, 523 (8th Cir.), cert. denied, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977); Williams v. United States, 416 F.2d 1064, 1070 (8th Cir. 1969). The trial court must balance the inconvenience and expense of separate trials against the prejudice to the codefendants of a joint trial. See United States v. Wofford, 562 F.2d 582 (8th Cir. 1977). A denial of severance is not grounds for reversal unless the appellants can show such clear prejudice that it indicates an abuse of the trial court's discretion. United States v. Jackson, supra.
 
 
 16
 A demonstration of prejudice requires more than merely showing a better chance of acquittal at a separate trial. United States v. Wofford,supra, at 586; Williams v. United States, supra. Neither may a defendant claim prejudice because a separate trial would permit him to call a codefendant as a witness unless he shows that the codefendant was likely to testify and that the testimony would be exculpatory. United States v. Wofford, supra; United States v. Jackson, supra at 524.[3] Moreover, persons charged in a conspiracy are usually tried together. United States v. Jackson, supra at 523; United States v. Kirk, 534 F.2d 1262, 1269 (8th Cir. 1976). This rule reflects a strong desire to avoid multiple litigation and conserve judicial resources since proof of guilt is often based on the same evidence.[4] Thus, the appellants have a heavy burden in showing that the trial court abused its discretion. We turn to the merits of the appellants' claims.
 
 
 17
 It is possible that uninstructed jurors could erroneously infer that defendants who are unwilling to testify are masking their guilt. See Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). This danger does not exist solely in multiple-defendant trials; it may also be present in the trial of a single defendant. Any danger to the appellants was obviated when the trial court carefully instructed the jury that the failure of some defendants to take the stand raised no inference of guilt. We will not assume that the jury intentionally disregarded this instruction. Under the circumstances, the joint trial did not impair the appellants' right against self-incrimination.
 
 
 18
 The appellants also claim that they were victims of a mass judgment. In particular, appellant Marsha Davis argues in a separate brief that she was prejudiced because the evidence against her was significantly weaker than the evidence against the other appellants.
 
 
 19
 Of course, the danger in a joint trial is that the jury will convict the defendants on the basis of the cumulative evidence produced at trial rather than the evidence relating to each defendant. United States v. Graham, supra at 1310. However, the fact that a defendant plays a small role in the conspiracy is not dispositive of the severance question. United States v. Jackson, supra at 525; United States v. Polizzi, 500 F.2d 856, 902 n.11 (9th Cir. 1974), cert. denied, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975). The issue is whether the jury was capable of compartmentalizing the evidence against each defendant in order to make an independent determination of guilt or innocence. United States v. Jackson, supra, at 525. United States v. Graham, supra at 1311.
 
 
 20
 It is clear that Marsha Davis was not a victim of a mass judgment. Sufficient evidence exists to support her conviction. She participated in several drug sales with appellant William Wilson, an acknowledged conspirator, and she had flown to California to pick up heroin, the conspiracy's usual method of operation. It was not necessary to prove that Marsha Davis knew all of the details of the conspiracy. It was sufficient to show that she knowingly contributed efforts in furtherance of the conspiracy. United States v. Schmaltz, 562 F.2d 558 (8th Cir. 1977), petition for cert. filed, 46 U.S.L.W. 3275 (October 25, 1977) (No. 77-561); United States v. Jones, 545 F.2d 1112, 1115 (8th Cir. 1976), cert. denied, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977).
 
 
 21
 In addition, the trial court carefully instructed the jury as to the applicability of the evidence to individual defendants. The jury appears to have acted in a conscientious manner consistent with these instructions. Its requests for various exhibits and for various parts of the charge as they related to individual counts indicate that the jury focused on each count and each appellant. See United States v. Bernstein, 533 F.2d 775, 794 (2nd Cir.), cert. denied, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976). It acquitted Marsha Davis on Count II, a distribution count. See United States v. Graham, supra at 1311 n.7; United States v. Bernstein, supra, at 794. We conclude that the appellants were not victims of a mass judgment. Thus, the appellants were not clearly prejudiced by the joint trial and the trial court did not abuse its discretion in refusing to grant the severance motions.
 
 
 22
 Marsha Davis, in her separate brief, makes additional arguments that have little merit. She argues that the trial court erred in denying her motion for judgment of acquittal on Count III, a distribution count. She claims that the uncorroborated testimony of a paid government informant was insufficient evidence to take the case to the jury. As a corollary to this, she argues that submitting Count III to the jury prejudiced the jury's deliberations on Count I, the conspiracy count.
 
 
 23
 In asserting that the testimony of a government informant must be corroborated, Davis questions the credibility of the testimony rather than its sufficiency. Judging the credibility of a witness is primarily a task for the jury. United States v. Wofford, supra at 587; United States v. Miller, 543 F.2d 1221 (8th Cir. 1976), cert. denied, 429 U.S. 1108, 97 S.Ct. 1142, 51 L.Ed.2d 561 (1977). We recognize, however, that the testimony of a paid government informant requires close scrutiny. United States v. Wofford, supra at 587. Here, the trial court instructed the jury that they should examine such testimony with particular care. Accordingly, we find no error here in the submission of Count III and, thus, its submission could not prejudice the jury's deliberations on Count I.
 
 
 24
 The judgment is affirmed.
 
 
 
 [1]
 After oral argument, we remanded this case to the trial court directing that it conduct an evidentiary hearing and certify its findings to this Court with respect to certain questions concerning the Jencks Act issue. The questions asked were whether Stemmons or his counsel had seen or in any other manner had adopted the letter; whether notes were made during or contemporaneous to the interview; and whether these notes were in existence at the time of trial and are presently in existence. See Goldberg v. United States, 425 U.S. 94, 108, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976)
 
 
 [2]
 18 U.S.C. § 3500(e) provides:
 (e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means
 (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
 (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
 (3) a statement, however, taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.
 
 
 [3]
 Although appellant Marsha Davis claims that a separate trial would have enabled her to call appellant William Wilson, she fails to make such a showing
 
 
 [4]
 Since the acts and statements of coconspirators in furtherance of the conspiracy would be admissible in either a joint trial or separate trials, it is difficult to understand the advantage to the individual appellants from severance. See United States v. Polizzi, 500 F.2d 856, 901-902 (9th Cir. 1974), cert. denied, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975)