UNITED STATES of America, Appellee,

v.

Loren Michael GREY BEAR, Tayron Dale Dunn, a/k/a Terry Dunn, Leonard George Fox and John Emmanuel Perez, a/k/a John Perez, Appellants.

UNITED STATES of America, Appellee,

v.

Jesse Dean CAVANAUGH, Paul Henry Cavanaugh, Maynard James Dunn, Timothy Sylvester Longie, Jr., Roger Darrel Charboneau, Dwayne Allen Charboneau, Richard John LaFuente, a/k/a Ricky LaFuente, Appellants.

Nos. 86–5264, 86–5265.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1988.

Decided Dec. 13, 1988.

Lay, Chief Judge, with whom Heaney, McMillian, Arnold, and Wollman, Circuit Judges, joined, filed opinion in support of reversal.

John R. Gibson, Circuit Judge, with whom Fagg, Bowman, Magill and Beam, Circuit Judges, joined, filed opinion in support of affirmance.

Jonathan T. Garaas, Fargo, N.D., for La-Fuente.

Mark Fraase, Fargo, N.D., for Fox.

Warren Sogard, Fargo, N.D., for Perez.

David Thompson, Fargo, N.D., for Loren Grey Bear.

Thomas Zimney, Grand Forks, N.D., for Cavanaugh.

Norman Anderson, Asst. U.S. Atty., Fargo, N.D., for appellee.

Before LAY, Chief Judge, and HEANEY, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL and BEAM, Circuit Judges.

## PER CURIAM.

This matter comes before the court en banc after a rehearing en banc on the panel's order granting a new trial based on misjoinder of the defendants under Federal Rule of Criminal Procedure 8(b). The en banc court is divided five-to-five on the issue of whether misjoinder occurred and therefore the district court's order finding joinder proper is affirmed based on the equally divided vote of the court en banc. The portions of the court's earlier opinion designated as III, IIIA and IIIB are ordered vacated. The other issues not determined in the panel opinion, *United States v. Grey Bear*, 828 F.2d 1286 (8th Cir.1987), are ordered referred back to a panel of this court for disposition. See supplementary order issued this date.

Statement of LAY, Chief Judge, with whom HEANEY, McMILLIAN, ARNOLD, and WOLLMAN, join.

The order affirming the district court by an equally divided en banc court has no precedential value. We write solely because of Judge Gibson's filed statement which represents the views of five judges of this court. We respectfully submit the statement, unless responded to, could cause confusion among lawyers and district judges of this circuit. The opposing statement which affirms the district court confuses rules of misjoinder of counts under Rule 8(a) with rules of misjoinder of parties under Rule 8(b). That statement is not in accord with prior decisions of this court and all other courts of appeals and deviates from principles governing misjoinder of parties under 8(b) as enuniciated by the United States Supreme Court.[1]

The opposing statement authored by Judge Gibson suggests that "our earlier decisions are in substantial tension, if not in direct conflict," and that *United States v. Bledsoe*, 674 F.2d 647 (8th Cir.), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982) created a conflict within the circuit. Until now, there has *never* been any tension or conflict in our decisions concerning joinder under 8(b). All of our decisions have consistently applied the rules governing joinder of parties under Rule 8(b). Until now we have been in accord with all other courts of appeals, established works on federal procedure, and the Supreme Court of the United States. To say *Bledsoe* was in direct conflict with our earlier decisions because some of them stated that misjoinder is *"usually"* or *"generally"* determined "on the face of the indictment alone" is a rhetorical conundrum to say the least. To urge that we should follow *United States v. Andrade*, 788 F.2d 521 (8th Cir.), *cert. de-*

---

**1.** Generally it may be said that the opposing statement finds no misjoinder under Rule 8(b) as to all parties other than Leonard Fox. This finding in itself overlooks the logical principle governing misjoinder that if one party is mis-joined it necessarily follows that all parties are misjoined. *See United States v. Velasquez,* 772 F.2d 1348 (7th Cir.1985), *cert. denied,* 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986).

*nied sub nom. Riley v. United States,* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986) and not *Bledsoe* is intellectually and legally confusing. *Andrade*'s language is simply the language of Rule 8(b) itself. *Andrade* relied upon *Bledsoe.* A rehearing en banc was denied in *Bledsoe* by the court en banc. *Andrade* could not overrule it. But ironically *Andrade* says what we hold here: "Rule 8(b) requires that there be some common activity involving all the defendants which embraces all the charged offenses * * *." *Id.* at 529. The opposition statement gives lip service to this requirement and then disavows it, espousing a totally new and unique theory to test joinder under Rule 8(b):

> I am satisfied that we are not limited to the language of the indictment alone, and that the existence of an overall scheme is not an ironclad requirement of Rule 8(b) joinder. Rather, we should consider whether the acts are part of a closely related series and whether there is a logical relationship among them.

Opposing statement *infra,* at 580. The statement thus confuses the liberal test under 8(a) relating to joinder of counts with the more restrictive test of 8(b) relating to joinder of parties. There is no authority for this new theory. In fact, no case or opinion has *ever* conceived it. Yet five judges of this court now proclaim it to be their understanding of the law.

Thus, the opposing statement reasons that proper joinder under Fed.R.Crim.P. 8(b) exists as long as a defendant participates in one act of a logically related series of transactions, without the necessity of a common scheme connecting the series. Such reasoning renders Fed.R.Crim.P. 8(b) meaningless and causes individual, unrelated defendants to face a joint trial of isolated conduct as long as the overall substantive counts are similar or logically related. This theory of joinder of 8(b) has long been rejected. The requirement of a common scheme and commonality of proof connecting all of the defendants has long

been the sine qua non of proper joinder of different defendants under 8(b). It is unfortunate that a gross miscarriage of justice has resulted in a mass trial, because five members of this court misapply established principles of joinder under 8(b) in order to avoid a new trial. The convenience of the government and the court may be served but the denial of a fair trial to the defendants is the exchange.

The issue of prejudice resulting from the joinder is relevant here first because there should be no question under existing case law that there clearly was a misjoinder of defendants under 8(b). Second, there should exist little doubt that prejudice subsumed that misjoinder.

The indictment alleged the joinder of eleven[2] defendants charged with one count of first degree murder and one count of assault to do great bodily harm. Even though there was no conspiracy or common scheme alleged, all defendants were named in both counts and therefore as to those two counts the defendants were properly joined under Fed.R.Crim.P. 8(b). However, the mere fact of joinder of all defendants under counts one and two does not provide sufficient commonality of plan or scheme to provide proper joinder for other unrelated counts. The government's case on the murder and assault charges was extremely weak and consisted primarily of conflicting testimony given by individual witnesses who were inebriated at the time the events occurred. Some of the defendants charged with murder were guilty of little more than being present at the time Peltier was beaten. As demonstrated in our earlier opinion, there was clearly insufficient evidence of murder or assault as to all but two of those charged. On the petition for rehearing the government did not challenge that finding. Under the circumstances it is readily apparent why the government disavowed that any conspiracy or common scheme to commit murder or assault was involved.[3] Yet, joined with

---

**2.** There were 13 original indictees. Two of them, Eugene (Geno) Dubois, and Merlin Knutson, died in an unrelated automobile accident on July 5, 1984.

**3.** I respectfully submit the basic analytical deficiency in the reasoning of the five judges finding proper joinder stems from the joinder of all eleven defendants in counts one and two. Since

counts one and two are the separate and unrelated deeds of four of the defendants with subsequent, separate acts of perjury and of witness intimidation. The government has never claimed in the district court or in this court that each of the defendants charged in counts one and two ever took part in, knew of or acquiesced in the separate acts of perjury and intimidation. There was never alleged any joint scheme or conspiracy among all of the defendants to connect the separate counts. As stated, when trial commenced, the government informed the district court and the jury it would not attempt to prove a conspiracy among any of the defendants.[4]

Rule 8(b) reads:

> **(b) Joinder of Defendants.** Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

No plainer, clearer proof of misjoinder of defendants can be stated than that which is evidenced by comparing the various counts of the indictment and Rule 8(b) itself.

Rule 8(b) by its own terms does not require each defendant to have participated in all of the counts, but it does specifically require each defendant to have participated in the "same series of acts or transactions." This clearly means that there must be some common conspiracy or scheme connecting *all* acts of *the series* in order to provide proper joinder.[5] Yet, under the analysis of the judges finding proper joinder, there need be no connection between the defendants as long as the acts alleged to be in the series are logically or closely related. Again this is a basic misconception confusing joinder of similar counts under Rule 8(a) and does not confront the problem of joinder of different defendants under Rule 8(b).

No clearer case of prejudice from such misjoinder can exist than the joint trial of defendants Perez and LaFuente,[6] charged with murder, along with three other defendants charged with perjury and intimidation of witnesses relating to the same homicide. Neither Perez nor LaFuente was alleged or shown to be involved in, or even to have known about the alleged perjury and witness intimidation by the other three defendants. *Perez and LaFuente denied their complicity in the murder and offered credible evidence, that if believed, would have allowed the jury to find that no murder took place. The*

---

all defendants are charged with the same murder and assault the reasoning is that they were all engaged in a common activity, i.e., the murder of Peltier. But this overlooks that the government did not allege and in fact disavowed any joint scheme or conspiracy of the defendants *to jointly effect a common purpose.* The homicide occurred when all eleven defendants happened to be present at the scene. Some of the defendants may have participated in illegal activity. However, they acted individually, without plan or conspiratorial purpose. Obviously, all defendants who were named in counts one and two could be tried together on those counts. But to reason that their joinder under counts one and two implies a common scheme or conspiracy which encompasses other criminal conduct by some, but not all of the defendants, constitutes a complete non sequitur. That the government disavowed a common conspiracy refutes this analysis.

4. Prior to trial, the government itself recommended to the trial court that "[c]ounts one and

two be severed from all other counts." One of the reasons stated was "[t]he risk of jury confusion will be minimized; the focus of the evidence will be sharper." Unfortunately, the trial court rejected the government's suggestion.

5. This principle is so fundamentally settled that it should hardly require citation. Professor Moore's treatise in discussing Rule 8(b) states: "Arguably, the phrase 'common scheme or plan' is redundant even as used in Rule 8(a)." 8 J. Moore, *Moore's Federal Practice* § 8.06[1] n. 7 (2d ed. 1988, Sept. 1988 rev.). Professor Moore adds that the "common scheme or plan" language contained in 8(a) is eliminated [in 8(b)] although it "would clearly be embraced within 'the same series of acts or transactions.'" *Id.* at 8–26.

6. The other nine defendants were dismissed by this court for insufficient evidence of second degree murder. The government did not request rehearing on these dismissals.

*opposing statement holds they received a fair trial even though the jury heard evidence that three other defendants, acting independently of Perez and LaFuente, intimidated and threatened witnesses to suppress the fact that Perez and LaFuente committed the murder. To hold no prejudice occurred under these circumstances is totally unrealistic. The misjoinder of parties and the resulting mass trial devastated the defense of Perez and LaFuente.* Again, this case is not about joinder of logically related counts under 8(a). The case relates to joinder of defendants who were tried by the government for separate crimes in which all defendants not only did not participate but in which there was no conspiracy or common scheme. A clearer misuse of Rule 8(b) joinder principles could not exist.

## A. Misjoinder

A panel of this court applied two principles in deciding that the defendants were misjoined: (1) the propriety of joinder must appear on the face of the indictment; and (2) in the absence of a conspiracy allegation in a multi-defendant indictment, the defendants are alleged to have engaged in the "same series of transactions" when they are alleged to have acted pursuant to an overall scheme about which all defendants knew and in which they all participated. *Grey Bear,* 828 F.2d 1286. The opposing statement which finds proper joinder states that these rules "perpetuat[e] an unduly restrictive interpretation of Rule 8(b)." Nevertheless, they are the established law in this circuit, based upon the sound principles and reasoning of the Supreme Court and other circuit courts as well.

### 1. *Face of Indictment Rule*

The Supreme Court has consistently acknowledged that Rule 8(b) is a pleading rule, to be applied before trial by examining the allegations in the indictment. *See, e.g., United States v. Lane,* 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986); *Schaffer v. United States,* 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). In the Supreme Court's most recent analysis (which the opposing statement does not mention) the Court explained:

> In *Schaffer v. United States,* 362 U.S. 511 [80 S.Ct. 945, 4 L.Ed.2d 921] (1960), three different groups of defendants were charged with participating in separate criminal acts with one other group of three defendants. The indictment also charged all the defendants with one overall count of conspiracy, making joinder under Rule 8 proper. At the close of the Government's case, however, the District Court concluded there was insufficient evidence of conspiracy and dismissed that count. The court then denied a motion for severance after concluding that defendants failed to show prejudice from the joint trial; the Court of Appeals affirmed. This Court recognized that "the charge which originally justified joinder turn[ed] out to lack the support of sufficient evidence." *Id.,* at 516 [80 S.Ct. at 948]. Essentially, at that point in the trial, there was a clear error of misjoinder under Rule 8 standards. Nevertheless, the *Schaffer* Court held that *once the Rule 8 requirements were met by the allegations in the indictment,* severance thereafter is controlled entirely by Federal Rule of Criminal Procedure 14, which requires a showing of prejudice. *Id.,* at 515–516 [80 S.Ct. at 947–948].

*Lane,* 474 U.S. at 447, 106 S.Ct. at 730 (emphasis added). *Schaffer* holds that "the validity of the joinder [is] to be determined solely by the allegations in the indictment * * *." 2 W. LaFave and J. Israel, *Criminal Procedure* § 17.3 at 377 (1984).

Moreover, Rule 8(b) is in the section of the Rules of Criminal Procedure entitled "Indictment and Information," and refers to permitting defendants to "be *charged* in the same *indictment* * * * if they are *alleged* to have participated in the same act or transaction * * *." (Emphasis added). The rule itself thus refers solely to the indictment's allegations as the basis for determining the propriety of joinder. *See also Velasquez,* 772 F.2d at 1354 ("Rule 8 on its face is about pleading rather than proof * * *."), *cert. denied,* 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986); *United States v. Harrelson,* 754 F.2d 1153,

1176 (5th Cir.) ("The propriety of joinder under Rule 8 is determined by the initial allegations of the indictment * * *."), *cert. denied,* 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241 (1985).

The opposing statement urges that our decision in *United States v. Bledsoe,* 674 F.2d 647 (8th Cir.), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982), followed in *United States v. Andrade,* 788 F.2d 521, and adhered to here, contradicts the rule that when the indictment invites joint proof, the prima facie validity of joinder is shown. *See, e.g., Haggard v. United States,* 369 F.2d 968, 974 (8th Cir.1966), *cert. denied,* 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 461 (1967). The dissent apparently believes that this rule is at odds with the "face of the indictment" rule. We respectfully submit this is not an accurate appraisal. As stated in *Bledsoe:* "Although a conspiracy count is not always essential for joinder of counts which do not all include every joined defendant, in the absence of such an allegation, other facts must be alleged which at least *suggest* the existence of an overall scheme encompassing all the defendants and all the charged offenses." 674 F.2d at 656–57 (emphasis added).[7] This is simply another way of saying if the indictment invites joint proof, a prima facie validity of joinder is shown.

The opposing statement next considers *Bledsoe* 's and the panel's analyses of the joinder issue and finds a purported inconsistency demonstrating that both opinions in fact looked beyond the face of the indictment. The statement asserts: "In addition, *Bledsoe,* in analyzing the propriety of joinder, makes reference to the evidence at trial, 674 F.2d at 656, as does the vacated portions of the panel opinion, *Grey Bear,*

828 F.2d at 1298–99." Opposing statement *infra,* at 583. This criticism both distorts the cases and confuses the two-pronged nature of the Rule 8(b) misjoinder analysis.

Both *Bledsoe* and the panel opinion in the present case considered the trial evidence only when discussing whether misjoinder was prejudicial. In particular, the *Grey Bear* opinion divides its Rule 8(b) analysis into two sections that correspond to the two prongs of the analysis after *Lane:* "Misjoinder" and "Prejudice." In discussing the first prong of the analysis the opinion refers solely to the face of the indictment. It is only when the opinion turns to the second prong of the analysis— prejudice—that it discusses the evidence at trial. Obviously where the indictment suggests an overall scheme and joint proof, appellate review can, with hindsight, demonstrate such joint participation to substantiate the district court's ruling finding proper joinder under 8(b). *See United States v. Martin,* 567 F.2d 849, 853–54 (9th Cir.1977) (Kennedy, J.) No such claim can be made here.

As in *Lane,* review of the trial evidence is necessitated only when the pretrial ruling allowing joinder under Rule 8(b) is found to have been in error. If the appellate tribunal finds misjoinder, it must then carefully weigh the trial evidence and determine whether the joinder was prejudicial. But such an analysis manifests no inconsistency nor does it contradict the rule that propriety of joinder under Rule 8(b) must be evaluated based upon the face of the indictment. The opposing statement's proposal that Rule 8(b) should also be governed by the evidence submitted at trial would obliterate the difference between Rules 8(b) and 14.[8]

---

**7.** The opposing statement contends that the panel did not follow *Haggard v. United States,* an opinion I authored in 1967. This is inaccurate. *Bledsoe* and our panel opinion rely on the analysis of *Haggard.* The opposing statement overlooks that in *Haggard* count one of the indictment was a conspiracy count. None exists here. When a conspiracy is alleged, conduct of any one of the parties to the conspiracy is adopted by all conspiracy members. However, when defendants act independently of other defendants, as Phillips did in several counts in *Bledsoe,* and as Grey Bear, Cavanaugh, and Fox did here

there exists a patent misjoinder on the face of the indictment.

**8.** Motions for misjoinder are of course made in the district court *before* trial, not *after* the evidence is received. However, assuming that appeals courts can evaluate the question of joinder by looking to the trial evidence to see if there was commonality of proof or a common scheme, there can be no such finding because here, there is no such claim or proof. Neither Perez nor LaFuente had knowledge of or participated in the alleged perjury and witness intimi-

### 2. *Overall Scheme Requirement*

The opposing statement fails to recognize that the "overall scheme" formulation is a long established and well accepted interpretation of the meaning of Rule 8(b)'s "same series of acts" language. *See, e.g., Velasquez*, 772 F.2d at 1353 ("The usual meaning [of same series of acts] is acts or transactions that are pursuant to a common plan or common scheme * * *."). *See also United States v. Chinchic*, 655 F.2d 547, 551 (4th Cir.1981); *United States v. Scott*, 413 F.2d 932, 935 (7th Cir.1969), *cert. denied*, 396 U.S. 1006, 90 S.Ct. 560, 24 L.Ed.2d 498 (1970). A "series" of acts implies that the acts are connected and related; a "common scheme" also suggests the requisite relationship. Thus, the "common scheme" test is not at odds with the inquiry formulated in *United States v. Wofford*, 562 F.2d 582, 585 (8th Cir.1977) ("whether the acts or transactions are part of a closely related series"), *cert. denied*, 435 U.S. 916, 98 S.Ct. 1471, 55 L.Ed.2d 507 (1978). Rather, it is an established means of refining the inquiry into what actually comprises a "closely related series." *See Moore, supra* note 5.

Rule 8(b) explicitly directs that each defendant need not have participated in *each act* of the series for joinder to be proper. Our panel opinion did not suggest otherwise. Nevertheless, each defendant must have participated in *the same series. See Wofford*, 562 F.2d at 585 (question is whether each defendant participated in the series of acts or transactions). Here, however, there was no "series" because there was no common agreement or plan, explicit or implicit. Instead, some of the individual defendants were alleged to have acted independently in separate, unrelated incidents.[9]

### B. Prejudice

This trial was long and complex, involved eleven defendants and resulted in a 5,000 page record. Limiting instructions, "in the context of [such] mass trials," can be inadequate to prevent prejudice. *United States v. Lane*, 474 U.S. 438, 450 n. 13, 106 S.Ct. 725, 732 n. 13, 88 L.Ed.2d 814 (1986). The proof was assembled around a theory of guilt by association. No common scheme

---

dation set forth in counts 7 and 11 against Cavanaugh, count 12 of perjury against Fox, counts 3, 4, and 5 of witness tampering and count 6 of perjury by Grey Bear.

**9.** The opposing statement cites cases that are purportedly inconsistent with this circuit's Rule 8(b) interpretation. Most of these cases, however, involved conspiracy charges, and therefore are entirely consistent with the requirement of allegations of conspiracy or common plan. *See United States v. Swift*, 809 F.2d 320 (6th Cir. 1987); *United States v. Erwin*, 793 F.2d 656 (5th Cir.1986); *United States v. Moeckly*, 769 F.2d 453 (8th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1196, 89 L.Ed.2d 311 (1986); *United States v. Corbin*, 734 F.2d 643 (11th Cir.1984); *United States v. O'Connell*, 703 F.2d 645 (1st Cir.1983); *United States v. Carmichael*, 685 F.2d 903 (4th Cir.1982), *cert. denied*, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983); *United States v. Isaacs*, 493 F.2d 1124 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974).

The other cited cases are clearly distinguishable. In each of these cases the charges common to all defendants evolved out of transactions evincing an implicit or explicit agreement to commit the charged offense. The additional charges against the defendants claiming to have been misjoined therefore arose from a common scheme. *See United States v. Perry*, 731 F.2d 985 (D.C.Cir.1984) (both defendants participated in each of two drug transactions); *United States v. Barton*, 647 F.2d 224 (2d Cir.) (defendant participated in one act of a common and continuing scheme to gain control of gambling enterprises), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981); *United States v. Barney*, 568 F.2d 134 (9th Cir.) (defendants both charged with transporting stolen vehicle in interstate commerce, offense in which common plan is implicit; perjury charge against one defendant properly joined), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); *Williams v. United States*, 416 F.2d 1064 (8th Cir.1969) (both defendants charged with kidnapping, an offense that when committed by more than one defendant necessarily involves a common scheme; one defendant properly charged with additional kidnapping count because it arose from a common scheme). In contrast, the charges common to all defendants in the present case—murder and assault—did not involve a common scheme to commit the offenses, nor were there any allegations that there was a united, agreed-upon scheme to murder or assault Eddie Peltier. Indeed, the government conceded in its opening statement that there was no such united scheme. Thus, while the cited cases involve a true "series" of transactions, there is no such "series" here.

or plan to kill and to conceal the death of Peltier was ever charged or proved.[10]

Moreover, although witness tampering and perjury may indeed be less "serious" charges than murder and assault, it is difficult to imagine offenses that would be more inflammatory on the issue of guilt of murder and assault.

We are also inclined to disagree that the jury's acquittal of some of the defendants on some of the charges is particularly relevant *on the present record.* All of the defendants were found guilty of murder or assault, despite the insufficiency of the evidence as to all but two. We cannot say that the spillover effect of the joinder of the perjury and witness tampering counts brought against only some of the defendants did not taint the jury's deliberations. Conversely, emphasizing the acquittal of some of the defendants on the perjury and witness tampering counts does not consider the possibility that absent the prejudicial joinder the jury might have acquitted on more counts or all counts against some or all of the defendants charged with perjury and witness tampering.

Finally, we add several observations about the prosecution's closing argument. Far from being an "isolated remark," the prosecutor's comments quoted in the majority opinion were typical of the tenor of the entire argument. In its closing, the prosecution: (1) notwithstanding evidence to the contrary, suggested that *all* defendants were somehow involved in witness intimidation or perjury; (2) repeatedly suggested that the defendants had the burden both to disprove the government's case and to affirmatively prove their own theory of the case; and (3) spoke of the defendants not as individuals against whom guilt must be proved beyond a reasonable doubt but as a "mob." The government rarely discussed the evidence as it related to individual defendants, arguing instead that the evidence showed that "they" did certain things, that a "mob" beat up the victim, that a "gang" was responsible for Peltier's death. The government's references in the final moments of its closing to the require-

---

10. Three of the opposing judges find that Leonard George Fox was misjoined. We find this analysis perhaps the most puzzling. Fox is said to have been misjoined because the perjury he allegedly committed took place over two years after Peltier's death. The perjury therefore was not part of the same series of acts under the opposing judges' "closely related series" or "logical relationship or interrelationship" test. There is a basic problem with this reasoning.

It is logically impossible to find that only *one* defendant was misjoined (although it is possible to find that only one defendant was *prejudiced* by misjoinder). Rule 8(b) states: "Two or more defendants may be charged in the same indictment * * * if they are alleged to have participated * * * in the same series of acts or transactions * * *." If one of many defendants is alleged to have participated in an act that, as the opposing judges find, is completely unrelated to the acts with which the other defendants are charged, then *all* of the other defendants have been misjoined—not necessarily to one another, but to the one defendant charged with the unrelated act. That particular defendant has also been misjoined.

The somewhat simplified facts of *Velasquez,* 772 F.2d at 1348, illustrate this principle. Defendants A, B, C, D, and E were charged with *selling cocaine in a common transaction* and were joined for trial. Defendant C was also charged with and jointly tried on an unrelated heroin transaction. All were convicted. The

Seventh Circuit first found that *all* defendants were misjoined under Rule 8(b) because the unrelated heroin transaction with which C was charged was not part of the same series of acts. *Id.* at 1356. The court then held that "the misjoinder of the heroin charges against [C] was not harmless error as to the cocaine charges[,]" and reversed and remanded for a new trial for all defendants on the cocaine charges. *Id.* The court found that the defendants had been prejudiced by the misjoinder of the heroin charge against C because:

"[t]he scanty evidence of cocaine dealings got a psychological boost from the well-substantiated heroin charges against [C]. To the jury it may have seemed that since he was guilty of heroin dealings in June 1982, he probably also was guilty of cocaine dealings the month before—and if the jury reasoned so, this would have made [the informant's] testimony about the cocaine dealings more credible and helped clinch the case against the other appellants."

*Id.* at 1355. C's conviction on the heroin charge was upheld, however, because the court found that the jury's deliberations on that charge had not been prejudiced by the misjoinder. *Id.* at 1356.

The concept is identical here. Even if one accepts the opposing judges' view (which we do not) that the only unrelated transaction is Fox's alleged act of perjury, the fact remains that as to *all* defendants there was not a "same series of acts." *All* defendants therefore were misjoined, at least, accepting that view, to Fox.

ment that the jury find guilt as to each individual defendant were too little and too late to overcome the prejudice created by its earlier implicit and explicit urgings of guilt by association.

The government asserts that its "all or nothing" argument was prompted by three sentences in the argument by one of the eleven defense attorneys who gave closing arguments. This assertion is specious. The government stated in argument "their all or nothing defense becomes just that, if one is guilty, it's pretty fair conclusion that all are guilty. That's the choice they made when they testified on that witness stand." The government then stated: *"The converse of that,* of course, is not true as [a defense lawyer] suggested." The government was clearly arguing here that if one is guilty, then they are all guilty, but if one is not guilty, that does not necessarily mean they are all not guilty. There was no reference in the defense lawyer's argument to an "all or nothing" defense. It is the government's interpolation of the defense argument that states "if one is guilty they are all guilty."

**Conclusion**

The panel's prior order requiring a new trial as to those defendants not otherwise dismissed for lack of sufficient evidence should be reinstated. We submit that it is a gross miscarriage of justice to find that these defendants were properly tried together.

JOHN R. GIBSON, Circuit Judge, with whom FAGG, BOWMAN, MAGILL and BEAM, Circuit Judges, join, stating the reasons for affirmance.

As the divided court today affirms the rulings of the district court with respect to joinder and severance, it is appropriate that we articulate the reasons that five judges vote in favor of this result. The panel opinion, *United States v. Grey Bear,* 828 F.2d 1286 (8th Cir.1987), perpetuates an unduly restrictive interpretation of Rule 8(b). The panel states that in considering Rule 8(b) cases we look only to the indict-

ment, where our earlier cases and those of other circuits do not so limit their inquiry. The panel also makes an absolute requirement of either a conspiracy or an overall scheme, contrary to our earlier decisions and those of other circuits. I am satisfied that we are not limited to the language of the indictment alone, and that the existence of an overall scheme is not an ironclad requirement of Rule 8(b) joinder. Rather, we should consider whether the acts are part of a closely related series and whether there is a logical relationship among them. Applying these principles, I would conclude that the counts of witness tampering and perjury against Cavanaugh, Perez and Grey Bear were properly joined with the counts of murder and assault against all the defendants and that the district court did not err in refusing to sever these counts. With respect to Fox, I would conclude that joinder was improper, because this charge of perjury was based on testimony before a grand jury some two years and two months after the assault, which I believe to be beyond the reach of Rule 8(b).[1] Because the murder conviction has been set aside, however, the misjoinder was not prejudicial and was harmless error with respect to the perjury conviction.

Jesse Dean Cavanaugh, John Emmanuel Perez, Loren Michael Grey Bear and eight others were charged together in Count One with the murder of Jerome Edward Peltier, and in Count Two with the assault of Peltier, on or about August 28, 1983 on the Devils Lake Sioux Indian Reservation in the District of North Dakota, in violation of 18 U.S.C. §§ 113, 1111, 1152, 1153 (1982). All were also charged in these counts with aiding and abetting, in violation of 18 U.S. C. § 2 (1982). Cavanaugh, Perez and Grey Bear were charged separately with witness tampering. These counts allege that "[o]n or about August 28, 1983, and continuing to the present, in the District of North Dakota and elsewhere," each of the defendants used threats and intimidation toward specific witnesses "to hinder, delay and prevent the communication * * * of infor-

---

1. Judges Bowman and Beam would hold that     joinder as to Fox was proper.

mation relating to the commission of a Federal offense * * *." [2] Grey Bear was also charged with committing perjury before a grand jury on September 8, 1983, and this count alleges that Grey Bear falsely denied seeing Peltier on the night of August 27 or in the early morning of August 28, 1983, or being near the area where Peltier was killed during that time.[3]

I believe that the allegations in the indictment, properly construed, are sufficient to allege that the incidents of witness tampering and Grey Bear's perjury were part of "the same series of acts" as the murder

2. Cavanaugh was charged in Counts Seven through Eleven with witness tampering and convicted on Count Nine. That count specifically alleged:

> On or about August 28, 1983, and continuing to the present, in the District of North Dakota and elsewhere,
>
> JESSE DEAN CAVANAUGH,
>
> defendant herein, did knowingly and willfully use intimidation and threats toward Frederick Michael Peltier and attempted to do so to hinder, delay and prevent the communication to a law enforcement officer and Judge of the United States of information relating to the commission of a Federal offense;
>
> In violation of Title 18, United States Code, Section 1512.

Perez was charged and convicted of witness tampering on Count 14, with allegations in essentially identical language, substituting his name and that of the subject of his claimed intimidation and threats, Mary McDonald. Grey Bear was charged in Counts 3, 4 and 5 with witness tampering and found guilty on Count 3. The allegations in these Counts were in essentially identical language, with Count 3 alleging that Frederick Michael Peltier was the subject of Grey Bear's alleged actions.

In addition to these charges, Richard John LaFuente was charged in Count Thirteen of witness tampering and acquitted by the jury.

3. Grey Bear was charged with perjury in Count Six and found guilty, and that count alleged:

1. On or about September 8, 1983, in the District of North Dakota,

LOREN MICHAEL GREY BEAR,

defendant herein, while under oath as a witness before a grand jury of the United States knowingly made false material declarations, namely:

2. The grand jury was investigating the circumstances of the death of Jerome Edward Peltier, who was found dead on North Dakota Highway 57 on the Devils Lake Sioux Indian Reservation approximately three miles from Fort Totten, North Dakota, on or about August 28, 1983, the apparent victim of a beating and being run over by a motor vehicle.

3. It was a matter material to the investigation to determine whether Loren Grey Bear saw the victim Peltier on the night of August 27, 1983, or in the early morning hours of August 28, 1983, and whether the defendant was on North Dakota Highway 57 near Ski Jump Road between midnight on August 28, 1983, and 6:00 a.m. on August 28, 1983.

4. In defendant Grey Bear's appearance before the grand jury on September 8, 1983, while under oath, defendant Grey Bear did knowingly declare before the grand jury concerning the material matters set out above:
Question: ... Did you ever see Eddie Peltier during that period from Saturday evening until Sunday morning, early in the morning?
Answer: No.

   *   *   *   *   *   *

Question: Did you see him anywhere that night?
Answer: No.
Question: Or that morning?
Answer: No.
Question: You were driving around the reservation, weren't you, between 4 and 6 o'clock in the morning?
Answer: Yes.
Question: Were you out on Highway 57 at any time in there?
Answer: Yea.
Question: Ski Jump Road.
Answer: No, not that far.

   *   *   *   *   *

Question: What I'm trying to get at Mr. Greybear [sic], did you go along Highway 57 earlier in the morning, say, 5:30 and 6 in the morning or 6 and 6:30?
Answer: No.

5. The above testimony of defendant Grey Bear, as he then and there well knew and believed, was false in that on or about August 27, 1983, Loren Grey Bear was present at a drinking party near the Bernice Cavanaugh Juarez residence in the presence of Jerome Edward Peltier and was present on or about August 28, 1983, when Jerome Edward Peltier was killed on North Dakota Highway 57 near the Bernice Cavanauagh [sic] Juarez residence;

In violation of Title 18, United States Code, Section 1623.

In addition, Leonard George Fox was charged with murder and assault and with perjury in Count 12 and found guilty. Count 12 was based upon Fox's testimony before the grand jury on October 29, 1985, and used allegations in paragraphs 2, 3 and 5 essentially identical to those in the Grey Bear count. Count 12 specifically outlined Fox's allegedly false testimony that he did not remember being at the Cavanaugh residence the night of August 27, 1983; his later outright denial; and that he did not remember seeing Eddie Peltier the night of August 27. Fox's appeal is examined separately in Part V, *infra*.

and assault, and that joinder of the defendants was therefore proper under Rule 8(b). We set forth the principles governing joinder of defendants recently in *United States v. Andrade*, 788 F.2d 521 (8th Cir.), *cert. denied*, 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986), where we stated:

> Rule 8(b) permits the joinder in a single indictment of two or more defendants "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 8(b) requires that there be some common activity involving all the defendants which embraces all the charged offenses, *but it is not necessary that each defendant have participated in each act or transaction of the series.* The prerequisites for joinder of defendants under Rule 8(b) are liberally construed * * *. Generally, the propriety of the joinder must appear on the face of the indictment.

788 F.2d at 529 (citations omitted) (emphasis added).

## I.

We first look to the indictment to determine whether it reveals a valid basis for joinder on its face, following *Andrade*. As we will presently discuss, our earlier decisions are in substantial tension, if not direct conflict, as to whether the propriety of joinder must always appear on the face of the indictment. The indictment is, however, an appropriate starting point. Analysis of the various charges shows "common activity involving all the defendants which embraces all the charged offenses." *Id.* All defendants were charged together with the murder and assault of Peltier, and of aiding and abetting the commission of these offenses.[4] The numerous additional counts demonstrate that all charged offenses were closely related and required a high degree of joint proof. On this basis, the allegations of the indictment are sufficient to satisfy the requirements of Rule 8(b).

The witness tampering counts allege that Cavanaugh, Perez and Grey Bear began to threaten and intimidate witnesses on the date of the murder and continued to do so through the date of indictment in an attempt to prevent law enforcement authorities from receiving information about "the commission of a Federal offense." Had the indictment stated that the offense was the assault and murder of Peltier, our task would be far more simple. When we look closely at the allegations in the indictment, however, the meaning becomes evident. The assault and murder are alleged to have occurred on the Devils Lake Reservation on August 28, 1983. Cavanaugh, Perez and Grey Bear are charged with using threats and intimidation toward witnesses beginning on that date to "conceal the commission of a Federal offense" in the same general geographic area. When the counts are read together, the only reasonable conclusion is that the general statement concerning "a Federal offense" refers to the assault and murder of Peltier. In addition, Cavanaugh and Grey Bear are alleged to have jointly threatened Frederick Michael Peltier, the victim's brother, and this makes the conclusion as to these two even more compelling.

The perjury charge against Grey Bear is much more specific, alleging that he falsely denied seeing Peltier on the night that he was killed or being near the scene of the crime, and that these statements had the purpose and effect of suppressing information about Peltier's death. These allegations make specific reference to the murder and assault, stating that "[t]he grand jury was investigating the circumstances of the death of Jerome Edward Peltier, * * * the apparent victim of a beating and being run over by a motor vehicle," and that Grey Bear was "present on or about August 28, 1983, when Jerome Edward Peltier was killed * * *." *See supra* note 3.

Finally, when the indictment is read as a whole, with attention to the various allega-

**4.** Before trial, the district court granted a separate trial to those defendants not charged with murder or assault to reduce the possibility of

prejudice and aid the jury in compartmentalizing the evidence.

tions against each individual, the logical relationship among the charges is underscored. The individual acts of witness tampering and perjury were undertaken to conceal the assault and murder, and these acts would not have been necessary but for the underlying offenses with which all defendants were charged. The joint charges of murder and assault supply the necessary "common activity involving all the defendants," *Andrade*, 788 F.2d at 529, and the close logical relationship between these charges and the individual counts of witness tampering and perjury demonstrates that the defendants' common activity "embrace[d] all the charged offenses," *id.*, and that all offenses were part of "the same series of acts" under Rule 8(b). *See Williams v. United States*, 416 F.2d 1064, 1068–69 (8th Cir.1969) (Count II of indictment charging defendant with kidnapping "while attempting to avoid apprehension following" a separate kidnapping with which he and others were charged in Count I "is a sufficient allegation that the Count II offense was part of the 'same series of acts * * *' involved in Count I").

## II.

While we could end our Rule 8(b) analysis at this point, we are not convinced that we should do so. The panel's opinion, relying upon *United States v. Bledsoe*, 674 F.2d 647 (8th Cir.), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982), states that "it is a well-settled rule in this circuit that the propriety of joinder must appear on the face of the indictment." *Id.* at 655. *See Grey Bear*, 828 F.2d at 1298. *Bledsoe* erred in stating that this was a well-settled rule, and in doing so actually created a conflict within the circuit on this point.[5]

*Bledsoe's* statement of the "face of the indictment" rule rests on a questionable

reading of the authorities on which it is based. The primary authority cited, *United States v. Sanders*, 563 F.2d 379 (8th Cir.1977), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 767 (1978), states only that the impropriety of joinder under Rule 8(b) "may appear before trial" and that "[t]his determination is *usually* made on the basis of the indictment alone." *Id.* at 382 (emphasis added); *accord, Andrade*, 788 F.2d at 529. *Sanders* leaves open the possibility that before trial, the government may be allowed to show that joinder is proper on the basis of a showing apart from the indictment. As *Sanders* held that the indictment was sufficient, the issue simply was not resolved there. *Bledsoe* also relies on *Chubet v. United States*, 414 F.2d 1018 (8th Cir.1969), in which this court considered only the allegations in an indictment in holding them insufficient to justify joinder. *Id.* at 1020. *Chubet* contains no attempt to demonstrate the propriety of joinder by other means. *Sanders* and *Chubet* do not answer the question whether allegations in the indictment must always be sufficient, by themselves, to show that joinder is proper. Our recent decision in *Andrade* reinforces this conclusion in stating that "*[g]enerally*, the propriety of the joinder must appear on the face of the indictment." 788 F.2d at 529 (emphasis added).

In addition, *Bledsoe*, in analyzing the propriety of joinder, makes reference to the evidence at trial, 674 F.2d at 656, as does the vacated portions of the panel opinion, *Grey Bear*, 828 F.2d at 1298–99. We should thus recognize that in appropriate circumstances we may and should look beyond the indictment to determine if joinder is proper. We should not read *Bledsoe* as limiting our consideration to the indictment

---

5. Today's opinion expressing the opposing view argues that Supreme Court authority limits consideration of joinder to the indictment. *Schaffer v. United States*, 362 U.S. 511, 514, 80 S.Ct. 945, 947, 4 L.Ed.2d 921 (1960), found joinder proper under the indictment but the basic discussion in the case deals with the remaining problem of prejudice and consideration of severance under Fed.R.Crim.P. 14. *United States v.*

*Lane*, 474 U.S. 438, 443–44, 106 S.Ct. 725, 728–29, 88 L.Ed.2d 814 (1986), points out that the government did not challenge the holding of misjoinder, 474 U.S. at 444 n. 5, 106 S.Ct. at 729 n. 5, and while *Schaffer* is cited, the court's discussion is directed to whether misjoinder may be harmless error. Neither case stands for the proposition that joinder may be considered solely on the allegations of the indictment.

only, recognizing the *Andrade* and *Sanders* language.[6]

It is appropriate that we look to the proof required for the charges sought to be joined.[7] Proof of the perjury and witness tampering counts, as charged in the indictment, required evidence of the circumstances surrounding Peltier's death. To establish perjury, the government was required to show that Grey Bear was present when Peltier was killed. Similarly, to prove witness tampering, the government was required to show that Grey Bear, Cavanaugh and Perez knowingly and willfully threatened and intimidated a witness to Peltier's assault or murder and did so in an effort to conceal the offense.[8] We have long held that when the indictment invites joint

proof, the prima facie validity of joinder is shown. *E.g., Haggard v. United States,* 369 F.2d 968, 974 (8th Cir.1966), *cert. denied,* 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed. 2d 461 (1967). We have further held that a perjury charge against one of two defendants may be joined with drug conspiracy charges against both when all of the charges require joint proof. *United States v. Moeckly,* 769 F.2d 453, 464–65 (8th Cir. 1985), *cert. denied,* 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986). Thus, joinder of the various defendants and counts was proper here. Other circuits, in considering analogous charges, have held that when the indictment requires joint proof, or there is a logical relationship among the charged offenses, joinder of defendants is proper under Rule 8(b).[9] The panel's decision

---

**6.** Here the issue of misjoinder was raised by the defendants before trial, resulting in full pretrial briefing and oral argument before the district court. Following the hearing, the district court ruled that "[t]he varying offenses charged in the indictment in this case all arise from an alleged common scheme, the commission and concealment of the assault and murder of Eddie Peltier." The panel's opinion rejects this finding after considering both the indictment and the evidence at trial, stating that "[t]here was no allegation, nor any evidence, of an overall scheme to cover up the circumstances of Peltier's death * * *." *Grey Bear,* 828 F.2d at 1298. We need not take issue with the panel's conclusion in this respect, as we do not view the "overall scheme" requirement as an essential requirement of Rule 8(b), but simply as one of several relevant considerations. *See infra* Part III.

**7.** While some circuits have gone so far as to conclude that the question of joinder may involve consideration of trial testimony, there is a substantial overlap in considering trial evidence with respect to the joinder issue and the inquiry as to prejudice. It is simply not necessary in this case that we extend our inquiry this far.

**8.** The panel's opinion acknowledges that the trial evidence from Mary McDonald and Fred Peltier established the witness intimidation, and that evidence established Grey Bear's perjury before the grand jury. *Grey Bear,* 828 F.2d at 1295, 1297.

**9.** *See, e.g., United States v. Swift,* 809 F.2d 320, 321–22 (6th Cir.1987) (perjury count against one defendant properly joined with racketeering counts against others and conspiracy count involving all, because all the counts were logically interrelated and involved many of the same elements of proof); *United States v. Erwin,* 793

F.2d 656, 665 (5th Cir.1986) (perjury charges against one defendant properly joined with conspiracy charge against others, where defendant's perjury charges stemmed from an investigation into profits from the others' conspiracy); *United States v. Corbin,* 734 F.2d 643, 649–50 (11th Cir.1984) (perjury charges against six defendants properly joined with substantive drug charges against eight, because proof of perjury required proof of knowledge of substantive drug offenses; "substantial identity" of facts and participants alleged); *United States v. Perry,* 731 F.2d 985, 989–92 (D.C.Cir.1984) (narcotics charge against one defendant properly joined with narcotics charge against both, because there was a substantial overlap of issues and evidence between the charges, and evidence offered before trial—but not alleged in the indictment—showed common drug activity involving both defendants and both transactions, establishing a logical relationship between the charged offenses); *United States v. O'Connell,* 703 F.2d 645, 648–49 (1st Cir.1983) (perjury count against one defendant properly joined with stolen goods counts against both defendants, because false testimony related directly to stolen goods charges and facts necessary to show guilt on latter were important subset of those needed to show guilt on former); *United States v. Carmichael,* 685 F.2d 903, 909–10 (4th Cir.1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983) (obstruction of justice charges against individual defendants properly joined with vote-buying charges against both, as former related to defendants' individual efforts to conceal underlying offenses and were therefore logically related); *United States v. Barton,* 647 F.2d 224, 239–40 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981) (defendant charged with one count of endeavoring to conceal evidence to obstruct grand jury investigation properly joined with six

therefore created a direct conflict between our interpretation of Rule 8(b) and that of the other circuits.

### III.

■ The panel based its decision on yet another principle announced for the first time in *Bledsoe;* namely, that in the absence of a conspiracy count, the charged offenses "must be part of one overall scheme about which all joined defendants knew and in which they all participated." 674 F.2d at 656. The panel stated that the indictment in this case does not allege that all defendants engaged in the perjury or witness tampering with which the five were charged, and that there was no allegation nor any evidence of an "overall scheme" to cover up the circumstances of Peltier's death involving all the defendants. *Grey Bear,* 828 F.2d at 1298.

Our cases have made clear that it was not necessary for the indictment to allege or for the government to prove that all of the defendants participated in the various acts of witness tampering and perjury. While Rule 8(b) requires all of the charged acts to be part of the same series, "it is not necessary that each defendant have participated in each act or transaction of the series." *Andrade,* 788 F.2d at 529. *Accord, United States v. Wofford,* 562 F.2d 582, 585 (8th Cir.1977), *cert. denied,* 435 U.S. 916, 98 S.Ct. 1471, 55 L.Ed.2d 507 (1978); *Williams,* 416 F.2d at 1069; *Haggard,* 369 F.2d at 973.

Nor was it necessary for the government to allege or prove "one overall scheme" to

cover up Peltier's death. The authorities relied upon in *Bledsoe* for this proposition, 674 F.2d at 656–57, hold only that when such a scheme is alleged, the propriety of joinder has been shown, and not that one overall scheme *must* be alleged to support joinder. *See United States v. Porter,* 441 F.2d 1204, 1212–13 (8th Cir.), *cert. denied,* 404 U.S. 911, 92 S.Ct. 238, 30 L.Ed.2d 184 (1971); *United States v. McKuin,* 434 F.2d 391, 395–97 (8th Cir.1970), *cert. denied,* 401 U.S. 911, 91 S.Ct. 875, 27 L.Ed.2d 810 (1971). Without explanation, the panel transforms a single factor which *Porter* and *McKuin* used to justify joinder into a hard-and-fast requirement, applying to any case in which the indictment lacks a conspiracy charge. Rule 8(b) requires only that the defendants "are alleged to have participated * * * in the *same series* of acts" to be joined. Fed.R.Crim.P. 8(b) (emphasis added). This language requires careful analysis of the relationship among the charged offenses, and it bars the imposition of a blanket rule that the indictment must contain either a conspiracy count or the allegation of a single unified scheme as to each type of offense charged.

Moreover, *Bledsoe's* overall scheme requirement, like its indictment rule, is in substantial conflict with a well-established line of circuit precedent. In *Haggard v. United States,* the court explicitly rejected the argument that an indictment must allege a "common scheme or plan" involving all of the defendants in order to demonstrate the propriety of joinder. 369 F.2d at 973–74 & n. 12. The individual acts of the

---

other defendants charged with various offenses related to bombings and attempted bombings, because obstruction charge "integrally related" to possession charge against two others and attempts by others to obstruct grand jury investigation); *United States v. Barney,* 568 F.2d 134, 135–36 (9th Cir.) (per curiam), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978) (perjury charge against one defendant properly joined with charge of transporting stolen truck against both, because false testimony related directly to stolen vehicle charge and evidence admissible in proof of one offense also admissible in proof of other); *United States v. Isaacs,* 493 F.2d 1124, 1158–59 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146, *reh'g denied,* 418 U.S. 955, 94 S.Ct. 3234, 41

L.Ed.2d 1178 (1974) (perjury and tax evasion counts against one defendant properly joined to counts relating to underlying claim of bribery against both defendants, because evidence of former counts pertinent to latter).

*See also United States v. Butera,* 677 F.2d 1376, 1384–86 (11th Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983) (propriety of joinder determined from indictment, government statements at pretrial proceedings, and facts developed at trial). *But cf. United States v. Harrelson,* 754 F.2d 1153, 1176–78 (5th Cir.), *cert. denied,* 474 U.S. 908, 1034, 106 S.Ct. 277, 599, 88 L.Ed.2d 241, 578 (1985) ("the propriety of joinder under Rule 8 is determined by the initial allegations of the indictment").

various defendants there contributed to a series of similar schemes to defraud a single bank, but there was no allegation nor any evidence of a single overall scheme involving all the defendants. *Id.* at 974. Similarly, *Williams v. United States* held that individual acts undertaken "to avoid apprehension following" an offense with which all defendants were jointly charged could be tried together, and relied upon *Haggard* in so ruling. 416 F.2d at 1068–69. Finally, in *United States v. Wofford* we articulated the test implicit in these cases: "our inquiry is whether the acts or transactions are part of a *closely related series* and whether each defendant participated *in the series* of acts or transactions." 562 F.2d at 585 (citing *Williams* and *Haggard*) (emphasis added). Under these principles, the district court's ruling on joinder should be affirmed. Again, neither *Bledsoe* nor the panel opinion in this case offers any explanation for its sudden departure from this established body of precedent, nor even acknowledges the change.

Finally, even if we were to take *Bledsoe* at face value, this is not a case in which the government failed to allege "any connection" between the charges against the individual defendants and the common activity of all. *Bledsoe*, 674 F.2d at 655. To the contrary, the individual perjury and witness tampering counts were closely related to the joint charges of murder and assault. A group of individuals allegedly involved in a joint murder and assault could be expected to reach at least a tacit understanding that their acts should not be divulged to law enforcement authorities. Thus, while the "overall scheme" language in *Bledsoe* may have been helpful in underscoring the lack of any common activity among the defendants there, it should not be extended to this case, where the defendants' common activity is a predicate for the numerous individual charges. *Wofford* defines our

inquiry far more accurately as "whether the acts or transactions are part of a closely related series and whether each defendant participated in the series of acts or transactions." 562 F.2d at 585. This definition is sufficiently broad to cover a third category of cases in addition to those that include a conspiracy or an overall scheme. This is consistent with the cases from other circuits that have stressed the logical relationship or interrelationship of the counts.[10] So tested, joinder was proper here.

## IV.

■ If joinder of the defendants was proper under Rule 8(b), then we must analyze any prejudice alleged to have resulted under the standards of Fed.R.Crim.P. 14.[11] *United States v. Lane*, 474 U.S. 438, 447, 106 S.Ct. 725, 730, 88 L.Ed.2d 814 (1986); *Schaffer v. United States*, 362 U.S. 511, 515–16, 80 S.Ct. 945, 947–48, 4 L.Ed.2d 921 (1960). *United States v. Andrade* again summarizes the governing legal principles admirably:

> In order to prevail on their claim that the district court abused its discretion in denying their motions to sever pursuant to Rule 14, appellants must make a showing of real prejudice to themselves individually. In the context of an allegation that incriminating evidence presented in a joint trial has "spilled over", we must consider whether the jurors were able to follow the trial court's cautionary instructions and compartmentalize the evidence against each defendant on each count individually. Appellants must demonstrate that the jury was unable to compartmentalize the evidence as it related to the separate defendants and such a demonstration requires more than a mere showing of a better chance of acquittal at a separate trial.

788 F.2d at 530 (citations omitted).

The district court carefully instructed the jury to give separate consideration to the

---

10. *See supra* note 9, specifically *United States v. Swift, United States v. Corbin, United States v. Perry, United States v. Carmichael, United States v. Barton,* and *United States v. Barney.*

11. Most of the defendants filed motions for severance of counts and of defendants, specifically referring to Fed.R.Crim.P. 14. The district

court, in its order of March 20, 1986, denied the motions for severance. On appeal, Grey Bear, Fox, LaFuente and Cavanaugh argued that the district court erred in denying severance under Rule 14. The vacated portion of the panel opinion made reference to the motions for severance. 828 F.2d at 1297, n. 9.

case of each individual defendant, taking into account only the evidence admitted against that defendant. These instructions were given on six occasions during voir dire, at the close of the government's case, and again in final instructions. Throughout trial, as various items of evidence were admitted, appropriate limiting instructions were given to the jury. The district court thus took adequate precautions to aid the jury in sorting through the charges, defendants, and evidence. *See United States v. Lueth,* 807 F.2d 719, 731 (8th Cir.1986). Further protection against prejudice to the defendants not charged with perjury or witness tampering lay in the fact that the evidence pertaining solely to these charges consumed a brief part of the entire trial, *id.,* and in the fact that these offenses are less serious and inflammatory than the crimes of murder and assault with which all defendants were jointly charged. *United States v. Kragness,* 830 F.2d 842, 862 (8th Cir.1987). Finally, the jury acquitted Maynard Dunn of murder, Jesse Cavanaugh on two counts of witness intimidation, and Ricky LaFuente—the sole defendant found guilty of first-degree murder—on one count of witness intimidation. "We have characterized this type of result before as 'convincing evidence that the jury was able to separate the proof as to each defendant.'" *Lueth,* 807 F.2d at 731 (quoting *United States v. Reed,* 658 F.2d 624, 630 (8th Cir.1981), *cert. denied,* 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982)). The jury was able to compartmentalize the evidence against LaFuente, Perez, Cavanaugh and Grey Bear in accordance with the court's instructions, *Andrade,* 788 F.2d at 530, and the district court did not abuse its discretion in denying the severance motions of these defendants.

In ruling that joinder of the defendants was not harmless error, the panel relied on a number of considerations, including what it describes as the government's "all or nothing strategy"; its view that evidence of perjury and witness tampering implied that a murder had in fact been committed; and its conclusion that the government's evidence was not overwhelming. *Grey Bear,* 828 F.2d at 1299. These factors do not require us to reverse the convictions under either the harmless error standard of Fed.R.Crim.P. 52(a) or the abuse of discretion standard of Fed.R.Crim.P. 14. The prosecutor's statement cited by the court was made in response to a statement by defense counsel that if one defendant were found not guilty, none should be found guilty. The error in this isolated statement, if any, was plainly harmless. *See United States v. O'Connell,* 841 F.2d 1408, 1428–29 (8th Cir.1988); *see also United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (reaffirming "invited response" doctrine of *Lawn ·v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed. 2d 321 (1958)). In addition, most if not all of the evidence offered to support the witness tampering and perjury charges would have been admissible for one purpose or another at a joint trial involving only counts one and two. *See, e.g., United States v. Monahan,* 633 F.2d 984, 985 (1st Cir.1980) (per curiam); *United States v. Provenzano,* 620 F.2d 985, 993–94 (3d Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *United States v. Cochran,* 475 F.2d 1080, 1081–83 (8th Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973). *See also United States v. Howard,* 504 F.2d 1281, 1283–84 (8th Cir.1974) (*res gestae* theory). Thus, any prejudice alleged to have resulted from joinder of the witness tampering and perjury charges with the counts of murder and assault was also harmless. *See Kragness,* 830 F.2d at 862; *Lueth,* 807 F.2d at 730. *Grey Bear* recognizes as much in stating that "attempts by *other* defendants to conceal the crime, in a case in which no conspiracy is alleged, are irrelevant to the question of an individual defendant's guilt." 828 F.2d at 1299.

The defendants have not shown that joinder of the perjury and witness tampering counts prejudiced the jury's deliberations on the charges of murder and assault. The inclusion of these eight individual counts cannot be considered confusing or prejudicial when the jury returned acquittals on three of them. Moreover, little would have been accomplished by severing these

charges when much the same evidence would have been admissible in a joint trial of all defendants on the common counts of murder and assault. The panel argues that the convictions which were reversed for insufficiency of the evidence demonstrate prejudice. *See id.* While it may be initially plausible to attribute these verdicts to "spill-over", nothing in the record before us indicates that joinder of the witness tampering and perjury charges prejudicially affected the jury's deliberations. The alleged sources of prejudice, as well as the claimed weakness of the evidence, relied upon by the panel are insufficient to justify reversal of the convictions.

### V.

■ The perjury conviction of Leonard George Fox involves different considerations. Fox was charged with committing perjury in his appearance before the grand jury on October 29, 1985, more than two years and two months after the assault and murder of Peltier. This incident was far removed from the acts of witness tampering proven by the government, which occurred immediately after the murder, *see Grey Bear*, 828 F.2d at 1295, 1297, and from Grey Bear's perjury before the grand jury on September 8, 1983, less than three weeks after the murder. *Id.* at 1297. To consider the perjury two years and two months later as part of the same series of acts as the murder and assault does not satisfy either the "closely related series" or "logical relationship or interrelationship" test.

If joinder was improper as to Fox, however, we must then consider whether there was prejudice and whether harmless error analysis required reversal of the district court's rulings in this respect. The issue of prejudice with respect to the murder charge is not material to our analysis, because the panel decision reversed the second-degree murder charge against Fox and this decision is now final. The perjury charge, however, is of a different nature. The panel held that sufficient evidence supported Fox's perjury conviction based on his denial that he was at the Juarez home the night Peltier was killed and that credi-

ble evidence indicated otherwise. 828 F.2d at 1297. Fox's grand jury testimony that he had not been at the Juarez residence the night of the incident was placed in evidence at trial. Shirley Greywater, Mylo Smith, Phyllis DeMarce and Fred Peltier all testified at trial that Fox was at the Juarez residence that night. Although Fox persisted in his denial in his trial testimony, the nature of the evidence as to perjury and the considerations discussed above cause me to conclude that Fox was not prejudiced by the improper joinder. If it were necessary to reach the issue of harmless error, I would conclude that the error in joinder was harmless beyond a reasonable doubt. *See Lane*, 474 U.S. at 449, 106 S.Ct. at 732. Accordingly, the district court did not err in denying Fox's motion for severance.

### VI.

We should make clear that joinder is not measured by the indictment alone and that overall scheme and conspiracy are not absolute requirements. Rather, we look to whether the transactions are part of a closely related series and whether each defendant participated in the series. So tested, and with the exception of Fox's perjury charge, the district court did not err in its joinder decision in this case, and any error as to Fox was not prejudicial and was harmless beyond a reasonable doubt.